Charles BROWN, L.L.P. d/b/a the Charles Brown Law Firm, Appellant,

v.

LANIER WORLDWIDE, INC. and Cam Edwards, Appellees.

No. 14–02–00851–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 6, 2004.

T. Michael Neville, Houston, for appellants.

Gary R. Maze, Joseph Robert Larsen, Houston, Christen Carey, East Amherst, for appellees.

Panel consists of Justices ANDERSON, SEYMORE and EVA M. GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this suit to enforce a foreign judgment, Charles Brown, L.L.P. d/b/a The Charles Brown Law Firm ("Brown L.L.P."), appeals the trial court's denial of its motion for summary judgment and the trial court's order granting summary judgment in favor of appellees, Lanier Worldwide, Inc. ("Lanier") and Cam Edwards. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The dispute between the parties centers around an arbitration award rendered in October 1999 in favor of Lanier. The award was confirmed in a Georgia court, against Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm ("Brown P.L.L.P.").[1] Lanier sought to enforce the Georgia judgment in a Texas district court where Brown L.L.P. had previously filed suit against Lanier. The district court entered summary judgment in favor of Lanier against Brown L.L.P and denied Brown L.L.P.'s summary judgment motion.

The parties' long and protracted legal dispute relates to an Order Agreement (the "Agreement") between the Charles Brown Law Firm and Lanier to place a copy machine in the offices of The Charles Brown Law Firm.[2] On December 12, 1995, Jerry Dodson, an employee of the Charles Brown Law Firm, and Cam Edwards, a Lanier representative, negotiated the

1. The Charles Brown Law Firm has been referred to in various forms throughout the underlying proceedings. These names include: The Charles Brown Law Firm; Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm; Charles Brown, L.L.P. d/b/a The Charles Brown Law Firm; Charles W.R. Brown Law Firm; and the Charles Brown Law Firm, L.L.P. As noted, this appeal directly concerns Brown L.L.P., that is, Charles Brown, L.L.P. d/b/a The Charles Brown Law Firm, and Brown P.L.L.P., or Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm.

2. The Agreement listed The Charles Brown Law Firm as the customer and listed the "Charles W.R. Brown Law Firm" as the entity for shipping and billing purposes.

Agreement. Under the terms of the Agreement, the parties were required to resolve any disputes through arbitration in Atlanta, Georgia.

The Charles Brown Law Firm used the copy machine for approximately three years, before Lanier removed it in early 1999.[3] In June of that year, Lanier filed a written demand for arbitration in Georgia claiming the respondents, listed in Lanier's Statement of Claims as "The Charles Brown Law Firm," "Charles W.R. Brown," and Dodson, failed to make required payments under the Agreement. In response, on June 29, 1999, Brown L.L.P. filed suit against Lanier in a Texas county court (hereinafter "county court action"), asserting claims for fraud and violations of the Texas Deceptive Trade Practices Act ("DTPA"). Relative to the arbitration, Brown L.L.P.'s petition stated:

> Defendant has threaten (sic) and has taken steps to have this matter submitted to arbitration in Georgia, which has forced Plaintiff to file this suit.... Plaintiff requests that the Court declare that the arbitration clause be declared void and unenforceable.

Brown L.L.P. also requested a temporary restraining order and temporary injunction.[4] Attached to the application was an affidavit executed by Charles Brown, averring (1) he had not signed the agreement consenting to arbitration; (2) he was the only person authorized to sign on behalf of Brown L.L.P.; and (3) if the injunction did not issue, "Charles Brown Law Firm,

L.L.P. will be required to go to great expense to appear in Georgia." The temporary restraining order was granted ex parte.

On July 13, 1999, a temporary injunction hearing was conducted in the county court action on Brown L.L.P.'s application. The court held a full evidentiary hearing on the issues raised in the application, including Brown's argument that, because he had not signed the Agreement, he had not agreed to arbitration.[5] Following the hearing, the injunction was denied and Lanier's motion to stay the proceedings and compel arbitration was granted.

In an attempt to once again halt the arbitration, on August 4, 1999, Charles Brown ("Brown"), appearing pro se, filed a lawsuit virtually identical to the county court suit in the 281st District Court of Harris County (the "district court action") against Lanier. Brown alleged fraud, fraudulent inducement, and violations of the DTPA. The petition contained, in part, the following:

> The Defendant is in the business of selling and leasing copy equipment and contacted an employee of Charles Brown, P.L.L.P.,[6] d/b/a The Charles Brown Law Firm, Plaintiff, for the purpose of placing a machine in Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm office....
>
> * * *
>
> Defendant never attempted to obtain the signature of Plaintiff either in his individual capacity or as an authorized rep-

---

3. The parties disagree regarding the reason for the machine's removal; however, the resolution of that issue is not relevant to this appeal.

4. In its application, Brown L.L.P. stated the agreement at issue was "signed by an employee of Plaintiff."

5. Other issues addressed at the hearing included Dodson's authority to sign on behalf of The Charles Brown Law Firm, Brown L.L.P.'s claims regarding the quality of and representations concerning the copy machine, and the issue of arbitrability.

6. Presumably "P.L.L.P." stands for professional limited liability partnership, however, this is not stated in the record.

resentative of Charles Brown, P.L.L.C., the managing partner of Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm. . . .

\* \* \*

The Defendant secured the signature of an employee of Charles Brown, P.L.L.P. on an agreement the lease or rental of a Copier, at copy of which is attached hereto (sic). The employee, Jerry Dodson, is not an employee of the Plaintiff and is not authorized to sign any agreements on behalf of the Plaintiff.

\* \* \*

Defendant has taken steps to have this matter **submitted to arbitration in Georgia,** which has forced Plaintiff to file this suit. . . . Plaintiff requests that the Court declare that the arbitration clause be declared void and unenforceable.

(emphasis in original). Brown also requested a temporary restraining order and temporary injunction in the district court. Attached to these documents was an affidavit signed by Jerry Dodson, stating he did not have the authority to bind "Charles Brown, P.L.L.P., d/b/a The Charles Brown Law Firm or Charles Brown, Individually to a contract." Charles Brown also furnished an affidavit, stating in part:

"Charles Brown, P.L.L.P., The Charles Brown Law Firm, d/b/a Charles Brown P.L.L.P. is a limited liability partnership, and I am the President of the managing partner Charles Brown P.L.L.C." Brown's request for a temporary restraining order and injunction was denied.[7]

On August 6, 1999, Charles W.R. Brown[8] signed and sent to the American Arbitration Association a response to Lanier's Statement of Claims ("Response"). The initial paragraph of the Response states: "There is no legal entity 'The Charles Brown Law Firm.' Charles Brown, P.L.L.P., files this response under protest to Claimant, Lanier Worldwide, Inc. Statement of Claims" (sic). Throughout the document, "Charles Brown, P.L.L.P." is identified as the business entity responding to Lanier's arbitration demand and is referenced as the correct legal entity to be named in the matter.[9]

The arbitration took place on October 4, 1999. In addition to Lanier, the Charles Brown Law Firm, Charles W.R. Brown, P.L.L.P., Brown L.L.P., and Charles Brown himself attended the arbitration,[10] all appearing under protest. The resulting arbitration award, dated October 13, 1999, awarded $29,639.18 to Lanier for accelerated payments and attorney's fees, as well as

**7.** Brown renewed his application for injunction before that court and on September 10, 1999, Brown's motion was heard. The court denied the motion a second time and ordered the parties to mediation. The mediation took place on September 28, 1999, but the parties were unable to settle the dispute.

**8.** The record indicates that Charles W.R. Brown and Charles Brown are one and the same person.

**9.** Both Dodson's and Brown's previously filed affidavits were attached to the Response.

**10.** According to Lanier's uncontroverted summary judgment evidence, in addition to those entities originally listed in its Statement of

Claims, Lanier also added the following parties as respondents to the arbitration proceeding: Charles Brown Law Firm, L.L.P.; Charles W.R. Brown, P.L.L.P.; Charles Brown P.L.L.P.; Charles Brown, L.L.P. d/b/a The Charles Brown Law Firm; Charles Brown, P.C.; and Charles W. Brown, P.L.L.C. "The arbitrator, when confronted with this list of defendants, and over [Lanier's] strong objection . . . , insisted upon having before her only the respondents that would be obligated to pay if the award were in favor of Lanier. Charles Brown affirmatively represented to the arbitrator, . . . that this entity was 'Charles Brown P.L.L.P.' "

prejudgment and postjudgment interest. The award contained the following finding: "LANIER WORLDWIDE, INC. and CHARLES BROWN, P.L.L.P. d/b/a CHARLES BROWN LAW FIRM did enter into and execute the Order Agreement and are therefore bound by that agreement to arbitrate all disputes arising therefrom."[11]

In early 2000, Brown L.L.P. sought relief from the arbitration award in the district court action and filed a petition and motion to vacate the award. Also, at that time, Lanier filed a motion to confirm the arbitration award in a Georgia court. In response, The Charles Brown Law Firm, Charles W.R. Brown, P.L.L.P., Charles Brown, L.L.P. d/b/a The Charles Brown Law Firm, Charles Brown, P.C., Charles W. Brown, P.L.L.C., and Dodson filed a Special Appearance, stating in part:

> The Brown Law Firm and Brown, PLLP are not legal entities and therefore are not subject to 9 U.S.C. §§ 1 et. seq. In addition, Brown PLLP was not named in the "Statement of Claims" as a party in the underlying arbitration upon which Plaintiff relies for this Petition, nor was it named in the Award of the Arbitrator.
>
> Brown, LLP denies that 9 U.S.C. § 1 et. seq. is applicable to it. In addition, Brown, LLP was not named in the "Statement of Claims" as a party in the underlying arbitration, upon which the Plaintiff relies for this Petition, nor was it named in the Award of the Arbitrator.[12]

On September 5, 2000, a hearing to confirm the arbitration award was held in the Georgia court.[13] At the hearing, Lanier presented its arguments for confirmation, while the Brown entities raised those issues argued in prior proceedings. Important to this appeal, the following discourse occurred between Brown's counsel, David Davenport, and the court concerning the various names of the law firm:

> THE COURT: What was the correct legal entity at the time the petition was filed?
>
> MR. DAVENPORT: *L.L.P. or P.L.L.P., it could have been either one.* There's no entity such as The Charles Brown Law Firm, that's just a d/b/a. He's consistently stated that.
>
> THE COURT: D/b/a of what, Charles Brown or Charles Brown P.L.L.P. or—
>
> MR. DAVENPORT: D/b/a The Charles Brown Law Firm or—
>
> THE COURT: How do I know it's not Charles Brown d/b/a Charles Brown Law Firm?
>
> MR. DAVENPORT: Your question was, Your Honor?
>
> THE COURT: Is it Charles Brown d/b/a The Charles Brown Law Firm?
>
> MR. DAVENPORT: No. *It's Charles Brown P.L.L.P. d/b/a The Charles Brown Law Firm or Charles Brown L.L.P. d/b/a The Charles Brown Law Firm.*
>
> THE COURT: How can it be P.L.L.P. or L.L.P.?

---

11. All claims against Jerry Dodson, individually, were denied.

12. The defendants also claimed the Georgia court lacked jurisdiction over them and asserted other claims.

13. Prior to this, on April 26, 2000, after filing its motion to confirm, Lanier filed a "Dismiss-

al Without Prejudice" in the Georgia court, dismissing without prejudice the following defendants: Charles Brown, L.L.P. d/b/a The Charles Brown Law Firm, Charles Brown, P.C., Charles W. Brown, P.L.L.C., and Jerry Dodson. There is no Georgia court order in the record approving the dismissal.

MR. DAVENPORT: Because it was during part of the time of this agreement—

THE COURT: A P.L.L.P.?

MR. DAVENPORT: P.L.L.P. and then the rules of Texas changed.

THE COURT: And then it became an L.L.P.?

MR. DAVENPORT: Then it became an L.L.P.

THE COURT: D/b/a The Charles Brown Law Firm?

MR. DAVENPORT: Yes. It's just a d/b/a . . .

* * *

THE COURT: So you're not taking issue with that, you think that's in correct form, Charles Brown, P.L.L.P. d/b/a The Charles Brown—

MR. DAVENPORT: That is a correct entity, but that is not the name in this lawsuit. . . .

(emphasis added). Lanier's counsel noted that all of the Brown entities had been served and requested judgment be rendered. The court confirmed the arbitration award against Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm. Final judgment was entered accordingly on September 25, 2000.[14]

Subsequently, Lanier filed a motion to domesticate its judgment in the Texas district court action where Brown L.L.P.'s suit was pending.[15] In response, Brown L.L.P. moved for summary judgment, challenging the Georgia judgment on the following grounds: (1) Charles Brown P.L.L.P. did not exist, was not a party to the lawsuit, and the Texas court lacked jurisdiction over Charles Brown P.L.L.P.; (2) any misnomer argument was precluded by the denial of Lanier's motion to amend the judgment in the Georgia court;[16] and alternatively, (3) the "Texas Court that referred the case to arbitration had no jurisdiction to refer the case to arbitration in Georgia, thereby rendering the judgment void."[17]

Lanier filed a cross-motion for summary judgment, arguing (1) the variance between Brown L.L.P. and Brown P.L.L.P. was merely a misnomer and because Brown had failed to plead misnomer, Brown L.L.P. was liable on the judgment; (2) the Brown entities actively promoted the misnomer and made judicial admissions in support of the judgment as rendered, therefore, the entities were estopped from asserting they had no liability for the judgment; and (3) Brown L.L.P.'s claims and causes of action were barred by the doctrine of res judicata.

In its response to Lanier's cross-motion for summary judgment, Brown L.L.P. argued it had in fact pleaded misnomer "in abatement" by filing a special appearance in the Georgia court and that Lanier had effectively dismissed Brown L.L.P. from the Georgia proceedings. The trial court denied Brown L.L.P's motion, granted Lanier's cross-motion and entered final judgment domesticating the Georgia judgment,

---

14. The judgment also decreed, in part, that there was a valid and enforceable agreement between the parties, jurisdiction and venue were proper in the Georgia court, and the defendants had been properly served.

15. Although Lanier's motion does not appear in the record, there is an authenticated copy of the judgment contained in the record.

16. On March 26, 2001, Lanier filed a "Motion to Amend to Correct Misnomer," which was denied by the Georgia court by order dated May 23, 2001.

17. This latter argument was not briefed on appeal and is therefore not before us. *See* Tex.R.App. P. 38.1(h); *Fields v. City of Texas City*, 864 S.W.2d 66, 68 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

but rendering it enforceable against Charles Brown L.L.P.

## II. ANALYSIS

In its first issue on appeal, Brown L.L.P. argues the trial court erred in granting Lanier's summary judgment motion because a fact issue exists as to: (1) whether Brown L.L.P. was the party named in the Georgia judgment; (2) whether the Georgia court's denial of Lanier's request to "correct misnomer" bars Lanier's claims against Brown L.L.P.; (3) whether Lanier's failure to timely seek modification of the arbitration award under federal law bars relief;[18] and (4) whether the Georgia court and the arbitration panel had personal jurisdiction over Brown L.L.P.

Brown L.L.P. argues in its second issue that the trial court erred in denying its motion for summary judgment because (1) the Georgia judgment did not name Brown L.L.P. as a judgment debtor; (2) Brown L.L.P. was dismissed from the Georgia lawsuit; (3) the Georgia court expressly denied Lanier's misnomer argument; and (4) Lanier had engaged in an unwarranted collateral attack of a prior adjudication of the same issue. We begin our analysis by examining Lanier's cross-motion for summary judgment because it is dispositive. We next review Brown L.L.P.'s collateral attack on the Georgia judgment, and conclude with a discussion of Brown L.L.P.'s motion for summary judgment.

### A. STANDARD OF REVIEW

The propriety of a summary judgment is a question of law and thus, we review the trial court's decision de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Taub v. Aquila Southwest Pipeline Corp.*, 93 S.W.3d 451, 462 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The question on appeal is whether the movant met his burden by establishing that no genuine issue of material fact exists and he is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Corporate Leasing Int'l, Inc. v. Groves*, 925 S.W.2d 734, 736 (Tex.App.-Fort Worth 1996, writ denied).

When cross-motions for summary judgment are filed, a reviewing court examines all of the summary judgment evidence presented by both sides, determines all questions presented, and if reversing, renders such judgment as the trial court should have rendered. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247

---

**18.** Brown L.L.P. did not raise the issue of modification under arbitration law in the trial court and we, therefore, do not consider it. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex.2000) (noting that on an appeal from summary judgment, issues not presented to the trial court cannot be considered); *see also Loera v. Interstate Inv. Corp.*, 93 S.W.3d 224, 228 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Moreover, we note that a review of the arbitration award is not before us in this appeal. The issue before us is enforcement of a foreign judgment. *See Fluor Daniel, Inc. v. H.B. Zachry Co.*, 1 S.W.3d 166, 170 (Tex.App.-Corpus Christi 1999, pet. denied); *Goodier v. Duncan*, 651 S.W.2d 25, 27 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (noting action seeking full faith and credit of sister state's judgment based on arbitration award was new action). Indeed, under the Federal Arbitration Act, a judgment on an arbitration award "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13 (1982); *see also Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 270 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (Fowler, J., concurring) (stating judgment entered upon an arbitration award is final and as effective as any judgment). We limit our review to those issues raised in the trial court regarding enforcement of the foreign judgment.

(Tex.1999); *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Vill. of Pheasant Run Homeowners Ass'n v. Kastor,* 47 S.W.3d 747, 749–50 (Tex. App.-Houston [14th Dist.] 2001, pet. denied).[19] When both parties move for summary judgment, each party must carry its own burden and neither can prevail due to the other's failure to meet its burden. *W.H.V., Inc. v. Assocs. Hous. Fin., LLC,* 43 S.W.3d 83, 87–88 (Tex.App.-Dallas 2001, pet. denied).

██ When the trial court's order granting summary judgment for one movant and denying summary judgment for the other does not specify the grounds on which it rests, we will affirm the trial court's judgment if any of the grounds raised in the prevailing movant's motion are meritorious. *Hanson v. Republic Ins. Co.,* 5 S.W.3d 324, 327 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (citing *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996)); *Groves,* 925 S.W.2d at 736; *see also Bradley,* 990 S.W.2d at 247.

██ During our review of the trial court's decision to enforce Lanier's foreign judgment, we are mindful that "public policy favors the validity of judgments." *Garza v. Tex. Alcoholic Beverage Comm'n,* 83 S.W.3d 161, 166 (Tex.App.-El Paso 2000), *aff'd,* 89 S.W.3d 1 (Tex.2002). When an attack is made upon a judgment, whether directly or collaterally, all presumptions "consonant with reason are indulged in order to uphold the binding effect of such judgment." *Garza,* 83 S.W.3d at 166; *see*

*also Roberts v. Hodges,* 401 S.W.2d 332, 334 (Tex.Civ.App.-Amarillo 1966, writ ref'd n.r.e.) (noting every reasonable presumption is indulged to sustain a foreign judgment).

## B. LANIER'S CROSS-MOTION FOR SUMMARY JUDGMENT

In its summary judgment motion, Lanier argued that Brown P.L.L.P. was named as judgment debtor in the Georgia judgment because a misnomer had occurred. Lanier also argued that estoppel principles should apply because Brown L.L.P. had "actively promoted" judgment in the name of Brown P.L.L.P. In response, Brown L.L.P. argued that the misnomer doctrine did not apply because a misidentification had occurred and, if the doctrine were to apply, it had pled misnomer in abatement.

### 1. Misnomer

██ Under Texas law,[20] a misnomer occurs when a plaintiff sues the correct entity but misnames it. *Chilkewitz v. Hyson,* 22 S.W.3d 825, 828 (Tex.1999). Contrarily, a misidentification arises when two separate legal entities actually exist and a plaintiff mistakenly sues the entity with a name similar to that of the correct entity. *Id.* When a misnomer occurs, service upon the correct party is proper and the defendant is then under a duty to plead the misnomer and seek abatement. *Rios v. Northwestern Steel & Wire Co.,* 974 S.W.2d 932, 934 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

---

**19.** *See also* 6 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE §§ 28:17 n. 129, 28:25 (2d ed.2000).

**20.** The laws of the state rendering a foreign judgment determine its validity. *Bard v. Charles R. Myers Ins. Agency, Inc.,* 839 S.W.2d 791, 795 (Tex.1992). However, if, as in this case, a party has not pled and proved the laws of the foreign jurisdiction, they are

presumed to be the same as the laws of Texas. *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 769 (Tex.App.-Corpus Christi 1999, pet. denied); *Ringer v. Transamerica Ins. Co.,* 650 S.W.2d 520, 523 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e). Here, we presume Georgia law and Texas law are the same and analyze the issues presented under Texas law.

Texas law recognizes that a misnomer of a defendant does not render a judgment void, provided the intention to sue the correct defendant is evident from the pleadings and process, such that the defendant could not have been misled. *See, e.g., Adams v. Consol. Underwriters,* 133 Tex. 26, 124 S.W.2d 840, 841 (1939) ("When a corporation intended to be sued is sued and served by a wrong corporate name ... and suffers judgment to be obtained, it is bound by such judgment."); *Dezso v. Harwood,* 926 S.W.2d 371, 374 (Tex.App.-Austin 1996, writ denied) (finding the correct defendant had sufficient notice she was being sued though her correct name was not on the citation, rejecting the argument she was not a party to the suit); *Hill Country Spring Water of Tex., Inc. v. Krug,* 773 S.W.2d 637, 640–41 (Tex.App.-San Antonio 1989, writ denied) (discussing enforcement of a foreign judgment, noting "[a] misnomer of a defendant does not render a judgment based on personal service ... void, provided the intention to sue the defendant actually served with citation is so evident from the pleadings and process that the defendant could not have been misled" (quoting *Cockrell v. Estevez,* 737 S.W.2d 138, 140 (Tex.App.-San Antonio 1987, no writ))); *see also Holberg & Co. v. Citizens Nat'l Assurance Co.,* 856 S.W.2d 515, 516 (Tex.App.-Houston [1st Dist.] 1993, no writ) (finding judgment modified to include an individual not previously named was not error, as individual had opportunity to defend himself when his sole proprietorship was sued). "The test seems to be whether or not the right person was sued, and whether or not he was put on notice that he, and not some other person, had been sued." *West v. Johnson,* 129 S.W.2d 811, 815 (Tex.Civ. App.-Fort Worth 1939, writ ref'd). The misnomer doctrine is applicable when dealing with enforcement of a foreign judgment. *See, e.g., Hill Country,* 773 S.W.2d

at 640–41 (applying misnomer doctrine, under different factual circumstances, and upholding foreign judgment).

In fact, upholding the validity of a judgment in which a misnomer has occurred has a long history in our jurisprudence. In *McGhee v. Romatka,* 92 Tex. 38, 45 S.W. 552 (1898), the court examined whether a judgment was binding on an individual named Jinks McGhee, although rendered against Alpheus McGhee, on a petition against Alpheus McGhee, and on citation to Alpheus McGhee, but served on Jinks McGhee. Jinks McGhee was the only child of Alpheus McGhee, but had never been known by the name Alpheus McGhee. *Id.* at 552. The court concluded the judgment was not void and was binding on Jinks McGhee. *Id.* at 554. In its opinion, the court cited to a Supreme Court case which stated:

> The only question open here is, whether, if a mistake be made in the name of a defendant, and he fails to plead it in abatement, the judgment binds him, though called by a wrong name. Of this we have no doubt. Evidence that it was an erroneous name of the same person must, therefore, be admissible; otherwise, a mistake in the defendant's name ... would render a judgment wholly inoperative.

*Lafayette Ins. Co. v. French,* 59 U.S. 404, 409, 18 How. 404, 15 L.Ed. 451 (1855); *see McGhee,* 45 S.W. at 554.

In addition, in *Abilene Independent Telephone & Telegraph Co. v. Williams,* 111 Tex. 102, 229 S.W. 847 (1921), the Texas Supreme Court noted:

> "The weight of authority is, that if the writ is served on the party, by a wrong name, intended to be sued, and he fails to appear and plead the misnomer in abatement, and suffers judgment to be obtained, he is concluded, and ... is

affected as though he were properly named therein."

*Id.* at 848 (quoting 1 FREEMAN ON JUDGMENTS § 154 at 279 (4th ed. 1898)). The *Abilene* court further stated, "[n]umberless errors entitle a party to a reversal of a judgment on appeal or writ of error, which are of no avail when relied on to support a collateral attack on the judgment or to furnish a basis for equitable relief against the enforcement of the judgment." *Id.* The *Abilene* court upheld the judgment against the misnamed defendant, noting he had "deliberately chose[n] to take the risk of being able to successfully assail the validity of the judgment, after its entry." *Id.* at 849.

The principles enunciated in these cases are particularly applicable given the facts of this case. Here, after judgment was rendered in the name of Brown P.L.L.P., Brown L.L.P. asserted (1) the P.L.L.P. entity was non-existent; (2) the P.L.L.P. entity had never existed; and (3) the Texas court lacked jurisdiction over the P.L.L.P entity. Rather than asserting misnomer, Brown L.L.P. allowed judgment to be rendered in the name of Brown P.L.L.P.—indeed, actively represented Brown P.L.L.P. as the judgment debtor—and thus assumed the risk of being unable to assail the judgment after its entry.[21]

Lanier provided ample summary judgment evidence demonstrating a misnomer occurred. For example, in response to

Lanier's demand for arbitration with The Charles Brown Law Firm, Charles W.R. Brown, and Dodson, it was Brown L.L.P. which filed suit in the Texas county court action seeking relief from the arbitration clause contained in the Agreement. In that suit, Brown L.L.P. alleged: "[Lanier] ... contacted an employee of [Brown L.L.P.] for the purpose of placing a machine in [Brown L.L.P.'s] office" and delivered possession of the copier to Brown L.L.P. Furthermore, Brown L.L.P. admitted to using the copier, making payments to Lanier for the copier, and indeed, sought affirmative relief against Lanier regarding the copier.[22] In addition to the lawsuit filed by Brown L.L.P., Charles Brown, then filed suit against Lanier, stating in his sworn petition that Lanier "contacted an employee of Charles Brown, P.L.L.P., d/b/a The Charles Brown Law Firm, Plaintiff, for the purpose of placing a machine in the Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm office." In his petition, Brown also acknowledged that Brown P.L.L.P. had used the machine and made payments on it. In the accompanying affidavits, both Dodson and Brown referred to Brown P.L.L.P. as the entity involved in the matter. Indeed, Brown's pleadings continually referred to "Charles Brown, P.L.L.P., d/b/a The Charles Brown Law Firm" as the entity involved.[23] In addition—although now alleged to be a non-existent entity [24]—Brown

---

**21.** *See also Morrel v. Nationwide Mut. Fire Ins. Co.,* 188 F.3d 218, 225 (4th Cir.1999) (rejecting argument that because judgment named entity other than that shown on application to vacate or correct arbitration award, it was judgment against another entity, stating that in having used the names interchangeably itself, the appellant was "somewhat disingenuous" in its argument).

**22.** Also, during the hearing on Brown L.L.P.'s request for a temporary injunction against Lanier, Charles Brown acknowledged that

Brown L.L.P. was invoiced for the copier and paid monthly rental and maintenance fees. There is evidence in the record indicating Brown P.L.L.P. also made payments on the copier.

**23.** In his petition, Brown also referred to Brown P.L.L.P. as a "non-party" to the suit.

**24.** Brown L.L.P.'s assertion, that Brown P.L.L.P. is a non-existent entity, supports Lanier's misnomer argument because a misiden-

P.L.L.P filed a Response to Lanier's Statement of Claims. As in Brown's pleadings, the Response consistently referred to Brown P.L.L.P. as the correct business entity involved in the matter.

Most significantly, during the confirmation hearing, when specifically questioned by the Georgia court as to the correct legal entity involved, counsel for the Brown entities clearly stated: "It's Charles Brown P.L.L.P. d/b/a The Charles Brown Law Firm or Charles Brown L.L.P. d/b/a The Charles Brown Law Firm."[25]

Importantly, Brown L.L.P. does not argue on appeal that two separate and distinct entities are involved nor are there any documents in the record indicating that the entities are in fact two separate, legal entities—there are no partnership agreements, no tax identification numbers, no certificates of limited partnership or assumed name which could support the conclusion that two separate legal entities are involved in this case.[26] Indeed, Brown L.L.P. merely asserts the P.L.L.P. entity does not exist and has never existed.

In addition, the evidence established the only contract at issue in this dispute was the contract between Lanier and "The Charles Brown Law Firm." It is undisputed that Dodson—representing to be an employee of Brown L.L.P. on one occasion and of Brown P.L.L.P. on another occasion—signed the Agreement. It is also clear that Lanier's intent was to pursue its remedies on the Agreement. Although the Georgia judgment named Brown P.L.L.P. as the judgment debtor, there is no question the judgment was rendered on the basis of the Agreement and the summary judgment evidence establishes that Brown L.L.P. was a party to that Agreement.

Also significant, Brown L.L.P. does not raise any issues regarding lack of service, or notice of any proceedings in this case, nor does it argue it was misled in any way by the misnomer.[27] Indeed, inasmuch as Brown L.L.P. originally responded to Lanier's request for arbitration by filing suit, it would be disingenuous to now argue it lacked adequate notice of the Georgia proceedings or the underlying claims. Moreover, there is record evidence indicating all Brown entities were properly served in the Georgia proceedings and no evidence was submitted by Brown L.L.P. to refute that claim.[28] Further, the Brown entities at-

tification necessarily involves two separate, though similarly named entities.

**25.** Brown's counsel noted that the business entity had initially been designated a "P.L.L.P.," but became an "L.L.P." because the Texas "rules" had changed. A corporate name change does not affect the identity of the organization or its rights and liabilities. *See Northern Natural Gas Co. v. Vanderburg,* 785 S.W.2d 415, 421 (Tex.App.-Amarillo 1990, no writ); *see also Zuniga v. Wooster Ladder Co.,* 119 S.W.3d 856, 862 (Tex.App.-San Antonio 2003, no pet. h.).

**26.** This fact distinguishes this case from those finding a judgment unenforceable against a separate and distinct legal entity because of due process concerns. *See, e.g., Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex.1991) (finding a judgment unenforceable against a

party not properly before the court, even though the party had been referred to in the pleadings). In this case, Brown L.L.P. had adequate opportunity to litigate its claims in this matter and was a party to the Georgia proceedings.

**27.** Brown L.L.P. asserts the Georgia court and arbitration panel did not have personal jurisdiction over it because it was not shown to have any contacts with Georgia and "the only possible basis of jurisdiction would be the contract signed by Dodson." We specifically address this argument in a latter portion of the opinion.

**28.** During the confirmation proceeding, Lanier's attorney stated that "all of the Brown entities" had been served in the Georgia proceedings.

tended the arbitration, even if under protest, and were represented at the Georgia confirmation hearing. Thus, there is no evidence that Brown L.L.P. was misled or prejudiced by any misnomer. The evidence establishes that Brown L.L.P. had an opportunity to litigate any claims it had against Lanier and that those issues initially asserted by Brown L.L.P. as precluding arbitration were fully litigated in both Texas and Georgia.

Based on this record evidence we find a misnomer occurred and Brown L.L.P. can be held liable on the judgment. *See, e.g., Adams*, 124 S.W.2d at 841 (finding a misnamed defendant may be held liable on a judgment); *Dezso*, 926 S.W.2d at 374 (finding sufficient evidence of misnomer based on pleadings and citation); *Hill Country*, 773 S.W.2d at 640–41 (finding an invoice and bill of lading and fact that wrongly named defendant had same address as appellant sufficient evidence to establish misnomer).

### 2. Estoppel

■ Lanier also argues Brown L.L.P. should be estopped from asserting that (1) Brown P.L.L.P. is not an existing entity; (2) Brown L.L.P. is not a proper party; and (3) Brown L.L.P. is not liable on the judgment. We agree. Lanier's summary judgment evidence establishes that affirmative representations were made by Charles Brown and on his behalf, as well as on behalf of the Brown entities, in both the Georgia and Texas proceedings. Those representations indicated Brown P.L.L.P. was the correct entity to be named as the judgment debtor. The Georgia court issued judgment in the name of Brown P.L.L.P. based upon those representations. Also, applying estoppel princi-

ples under these circumstances serves judicial efficiency and the due administration of justice.

■ Even where a party making a collateral attack on a judgment can establish a recognized ground for the attack, he may be barred by an affirmative defense, such as estoppel. *See Caldwell v. Barnes*, 975 S.W.2d 535, 536, 539 (Tex.1998) (applying equitable principles in case involving foreign judgment); *Centre Equities, Inc. v. Tingley*, 106 S.W.3d 143, 150 (Tex.App.-Austin 2003, no pet.) (applying doctrine of collateral estoppel to foreign judgment); *St. Clair–Urdaneta, Inc. v. Marathon Oil Co.*, No. 05–96–00434–CV, 1999 WL 72202, at *6–7 (Tex.App.-Dallas Feb. 12, 1999, no pet.) (not designated for publication) (examining foreign judgment under doctrine of judicial estoppel).[29] When a party takes a position in a collateral attack on a judgment that is contrary to its position in the suit underlying the judgment, that party will be judicially estopped to assert that the judgment is invalid. *See Mueller v. Banks*, 332 S.W.2d 783, 786–87 (Tex.Civ. App.-San Antonio 1960, no writ); *Lawrence v. Bradley*, 295 S.W.2d 746, 749 (Tex. Civ.App.-Dallas 1956, no writ) (stating a party risks losing the right to attack a void judgment, if the party's conduct has worked an estoppel).

■ Under the doctrine of judicial estoppel, a party who has made a sworn statement in a pleading, deposition, oral testimony, or affidavit in a judicial proceeding is barred from maintaining a contrary position in a subsequent proceeding. *In re Estate of Loveless*, 64 S.W.3d 564, 578 (Tex.App.-Texarkana 2001, no pet.); *DeWoody v. Rippley*, 951 S.W.2d 935, 944 (Tex.App.-Fort Worth 1997, pet. dism'd by

---

**29.** *See also* 5 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 29:27 (2d ed.2000).

agreement); *see also St. Clair–Urdaneta,* 1999 WL 72202, at \*6–7. The judicial estoppel doctrine is not true estoppel at all, but arises from "positive rules of procedure based on justice and public policy issues." *Loveless,* 64 S.W.3d at 578; *DeWoody,* 951 S.W.2d at 944. In *Mueller v. Banks,* the court noted:

> [Judicial estoppel] is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present. Under the doctrine of judicial estoppel, as distinguished from equitable estoppel by inconsistency, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made.

*See Mueller,* 332 S.W.2d at 787 (citations and internal quotations omitted).

▉▉▉▉ Significantly, the doctrine is intended to protect the integrity of the judicial system and to prevent a party from "playing fast and loose" with the courts to suit the party's purposes. *Stewart v. Hardie,* 978 S.W.2d 203, 208 (Tex. App.-Fort Worth 1998, pet. denied). The doctrine is not intended to protect litigants; instead, its purpose is to prevent intentional self-contradiction as a method of gaining an unfair advantage. *Id.* The elements of judicial estoppel are (1) a sworn, prior inconsistent statement made in a prior judicial proceeding; (2) the successful maintenance of the contrary position in the prior action; (3) the absence of inadvertence, mistake, fraud, or duress in the making of the prior statement; and (4) the statement was deliberate, clear, and unequivocal. *DeWoody,* 951 S.W.2d at 944. Here, beginning with its sworn petition filed in the county court action, Brown L.L.P. unequivocally represented itself as the party involved in the dispute with Lanier regarding the copy machine. Further, Charles Brown testified in that court that the Charles Brown Law Firm was a "limited liability partnership," and that he and the Charles Brown Law Firm, P.L.L.C. were the only two principals involved in the partnership. Thereafter, in the district court action, Charles Brown [30] averred that Lanier "contacted an employee of Charles Brown, P.L.L.P., d/b/a The Charles Brown Law Firm, Plaintiff, for the purpose of placing a machine in Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm," contradicting the earlier statement that Brown L.L.P. was the entity involved. Brown stated further, "Charles Brown as authorized representative of Charles Brown, P.L.L.C., the managing partner of Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm...." In fact, throughout Brown's petition, he referred to the P.L.L.P. entity as being the party involved in the matter. Likewise, in his accompanying affidavit, Brown averred: "Charles Brown, P.L.L.P., The Charles Brown Law Firm, d/b/a Charles Brown P.L.L.P. is a limited liability partnership and I am the President of the managing partner Charles Brown P.L.L.C." Further, it was Brown P.L.L.P. that filed the Response to Lanier's Statement of Claims in the Georgia proceeding and, in attached affidavits, both Brown and Dodson represented the P.L.L.P. entity as the party involved.

Thus, Brown L.L.P. was represented as being a party to the dispute with Lanier, as was Brown P.L.L.P. in both the Georgia proceedings and in the Texas proceedings. Further, Brown P.L.L.P. was represented

---

**30.** Charles Brown filed his original petition in the Texas district court in August 1999. Brown L.L.P. filed its original petition in that court in December of 1999.

as an existing entity. These representations are contrary to the position Brown L.L.P now asserts, that is, Brown L.L.P. was not a party to the underlying actions and Brown P.L.L.P. is not an existent entity and has never existed. That Brown P.L.L.P. was the entity named as the judgment debtor in the Georgia judgment evidences Brown successfully maintained this contrary position in the underlying proceedings. Further, there is no evidence in the record that these statements were made due to fraud or duress. Therefore, we find the elements necessary for application of the judicial estoppel doctrine are satisfied.

Additionally, pleadings in other actions which contain statements inconsistent with the party's present position can also be received as admissions. *Izaguirre v. Tex. Employers' Ins. Ass'n*, 749 S.W.2d 550, 555 (Tex.App.-Corpus Christi 1988, writ denied). A judicial admission results when a party makes a statement of fact which conclusively disproves a right of recovery or defense currently asserted. *See Richards v. Comm'n for Lawyer Discipline*, 35 S.W.3d 243, 247 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A judicial admission must be (1) made in the course of a judicial proceeding; (2) contrary to an essential fact for the party's defense; (3) deliberate, clear, and unequivocal; (4) related to a fact upon which judgment for the opposing party could be based; and (5) the enforcement of the admission would be consistent with public policy. *Id.* A judicial admission is conclusive on the party making it; thus, it relieves his adversary from proving the fact admitted to and further bars the party from disputing it. *Id.* Statements made by a party's attorney also qualify as judicial admissions. *See DeWoody*, 951 S.W.2d at 935.

During the confirmation hearing in the Georgia court, counsel for the Brown entities stated unequivocally that Brown L.L.P. and Brown P.L.L.P. were one and the same entity. That statement operates as a judicial admission and evidences that Brown P.L.L.P. and Brown L.L.P. are in fact one and the same entity. Further, many of the statements set forth above in the discussion on judicial estoppel also serve as judicial admissions. Those statements demonstrate Brown L.L.P. was a party to the underlying proceedings and Brown P.L.L.P. was represented as the party liable on the judgment. The statements were made during the course of the Georgia and Texas proceedings and were relied on by the Georgia court. In addition, the statements are contrary to Brown L.L.P.'s current position and involve a fact essential to Brown L.L.P.'s current defense. Moreover, giving conclusive effect to these statements is consistent with public policy. Indeed, were we to deny the conclusiveness of these statements, Brown L.L.P. would benefit from its lack of candor with the Texas and Georgia courts. Accordingly, we find that application of the judicial estoppel doctrine is warranted under the facts of this case to protect the integrity of the judicial system. Further, we find that statements made by Brown L.L.P. operate as judicial admissions, preventing it from now disputing that it was not a party to the underlying proceedings.

## 3. Brown L.L.P.'s Special Appearance

We also reject Brown L.L.P.'s argument that it pleaded misnomer in abatement by filing a special appearance in the Georgia court. Assuming without deciding that Brown L.L.P.'s special appearance was a sufficient "plea in abatement," it did not specifically include the entity at issue, Brown P.L.L.P. Brown L.L.P.'s special appearance listed the following respondents in the caption: "The Charles Brown Law

Firm, Charles W.R. Brown, P.L.L.P., Charles Brown L.L.P., d/b/a The Charles Brown Law Firm, Charles Brown P.C., Charles W. Brown, P.L.L.C., and Jerry Dodson." In the body of the document, the entities were referred to in the following manner: "The Charles Brown Law Firm ('Brown Law Firm'), Charles W.R., P.L.L.P. ('Brown, PLLP'), . . . ." It was then stated in the text of the document, "The Brown Law Firm and Brown, PLLP are not legal entities." According to Brown L.L.P.'s argument, this served as a plea in abatement, sufficiently apprising the court and the parties of the misnomer. We cannot agree. Given the number of Brown entities referred to in the course of the Georgia and Texas proceedings, simply stating that "Charles W.R. Brown P.L.L.P." is not a legal entity did not serve to sufficiently advise the court or the parties that Charles Brown, P.L.L.P. d/b/a The Charles Brown Law Firm was a non-existent entity or that a misnomer had occurred.

Moreover, although Brown L.L.P. claims it was dismissed from the Georgia suit prior to rendition of the judgment, it failed to provide evidence of this. In the trial court, Brown L.L.P. furnished a copy of Lanier's motion to dismiss filed in the Georgia court and stated a copy of the order approving the dismissal was attached; however, the record contains no such order. Thus, there is no evidence indicating the Georgia court approved the

motion and no evidence Brown L.L.P. was in fact dismissed from the Georgia suit. *See Rosales v. Davis,* 260 Ga.App. 709, 580 S.E.2d 662, 663 (2003); *Manning v. Robertson,* 223 Ga.App. 139, 476 S.E.2d 889, 891 (1996); *see also* Ga.Code Ann. § 9–11–21 (1966). However, based on our findings of misnomer and estoppel, even if the order of dismissal were included in the record, we could not find that an order of dismissal would be conclusive on the issue.

In sum, we find a misnomer occurred in the underlying judgment in naming Brown P.L.L.P. as the judgment debtor. Further, Brown L.L.P. can be held liable on the judgment and is judicially estopped from now asserting otherwise. Accordingly, we hold the trial court properly granted Lanier's summary cross-motion for summary judgment and overrule Brown L.L.P.'s first issue.

### C. Brown L.L.P.'s Summary Judgment Motion

 In its second issue, Brown L.L.P. asserts the trial court erred in denying its summary judgment motion. In its motion, Brown L.L.P. argued Brown P.L.L.P. did not exist, was not a party to the Texas suit, and the Texas court lacked jurisdiction over Brown P.L.L.P.[31] Brown L.L.P. also argued Lanier was precluded from asserting a misnomer argument because the Georgia court denied Lanier's request to amend the judgment.[32] A trial court

---

**31.** Attached to Brown L.L.P.'s summary judgment motion was Charles Brown's affidavit, stating he had never done business in the name of Brown P.L.L.P. However, as previously addressed in the estoppel section, *supra,* Brown L.L.P. is estopped from asserting that Brown P.L.L.P. is a non-existent entity. *See, e.g., Highway Contractors, Inc. v. West Tex. Equip. Co.,* 617 S.W.2d 791, 793–94 (Tex.Civ. App.-Amarillo 1981, no writ) (applying judicial estoppel principles in summary judgment context); *see also Overstreet v. Home Indem.*

*Co.,* 669 S.W.2d 825, 827 (Tex.App.-Dallas 1984) (stating that summary judgment evidence contradicting judicial admission is incompetent evidence), *rev'd on other grounds,* 678 S.W.2d 916 (Tex.1984) (per curiam).

**32.** Brown L.L.P. also argues that neither the arbitration award nor the Georgia judgment make any findings as to whether Brown L.L.P. is a party to the contract; however, Brown L.L.P. fails to provide any argument or authority in support of its contention that

should grant a defendant's summary judgment motion if the defendant disproves at least one essential element of the plaintiff's causes of action, or the defendant establishes all the elements of an affirmative defense as a matter of law. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

### 1. Enforcing a Foreign Judgment

■ It is well established that the final judgment of a sister state must be given the same force and effect it would be given in the rendering state. *Markham v. Diversified Land & Exploration Co.,* 973 S.W.2d 437, 439 (Tex.App.-Austin 1998, pet. denied). This recognition of foreign judgments is required under the Full Faith and Credit Clause of the United States Constitution. U.S. CONST. art. IV, § 1; *Markham,* 973 S.W.2d at 439.

Texas recognizes two methods of enforcing a foreign judgment: (1) filing the judgment in accordance with the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), and (2) filing a common-law action to enforce the judgment. TEX. CIV. PRAC. & REM.CODE §§ 35.003, 35.008; *see Brown's Inc. v. Modern Welding Co.,* 54 S.W.3d 450, 453 (Tex.App.-Corpus Christi 2001, no pet.).

■ In this case, by seeking enforcement of the Georgia judgment in the district court action, Lanier elected to pursue enforcement through a common-law action.[33] *See* TEX. CIV. PRAC. & REM.CODE § 35.008; *Brown's Inc.,* 54 S.W.3d at 453. When a common-law action is pursued as the method of enforcement, the proceeding has the same character as any other civil proceeding; thus, the judgment creditor, as plaintiff, initiates the action, the judgment debtor, as defendant, can assert his defenses, and an appealable judgment results. *See, e.g., Wu v. Walnut Equip. Leasing Co.,* 909 S.W.2d 273, 277–78 (Tex. App.-Houston [14th Dist.] 1995), *rev'd on other grounds,* 920 S.W.2d 285 (Tex.1996); *Moncrief v. Harvey,* 805 S.W.2d 20, 22 (Tex.App.-Dallas 1991, no writ).

■ Once the party seeking enforcement of a foreign judgment has presented an authenticated judgment that appears to be a final and valid judgment, the burden then shifts to the party resisting the judgment to establish an exception to full faith and credit. *E.g., Mitchim v. Mitchim,* 518 S.W.2d 362, 364 (Tex.1975); *Reading & Bates Const. Co. v. Baker Energy Res. Corp.,* 976 S.W.2d 702, 713 (Tex. App.-Houston [1st Dist.] 1998, pet. denied); *Myers v. Ribble,* 796 S.W.2d 222, 224 (Tex. App.-Dallas 1990, no writ); *First Nat'l Bank of Libby, Montana v. Rector,* 710

---

any such finding was necessary. Arbitrators are not required to state the reason for their award or to make any findings of fact. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Atlanta Gas Light Co. v. Trinity Christian Methodist Episcopal Church,* 231 Ga.App. 617, 500 S.E.2d 374, 377 (1998). Also, the record does not indicate that Brown L.L.P. requested the Georgia court make any findings. Under Georgia law, a party must request that findings be made. *See* GA.CODE ANN. § 9–11–52(a), (c) (1970); *Payson v. Payson,* 274 Ga. 231, 552 S.E.2d 839, 842 (2001). Further, Brown L.L.P. argues there is no summary judgment evidence the contract was

signed on its behalf; however, we do not address this assertion because the issue was litigated in the underlying proceedings and goes to the merits of the original controversy. *See Cash Register Sales & Servs. of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278, 281 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (noting that no defense going to the merits of the original controversy may be raised in collateral attack).

**33.** There is no dispute between the parties that Lanier pursued enforcement through a common-law action.

S.W.2d 100, 103 (Tex.App.-Austin 1986, writ ref'd n.r.e.); *Roberts v. Hodges,* 401 S.W.2d 332, 334 (Tex.Civ.App.-Amarillo 1966, writ ref'd n.r.e.). Recognized exceptions to full faith and credit requirements are (1) the judgment is interlocutory; (2) the judgment is subject to modification under the law of the rendering state; (3) the rendering state lacked jurisdiction; (4) the judgment was procured by extrinsic fraud; and (5) limitations had expired. *Reading & Bates,* 976 S.W.2d at 713.

■■■ A defense asserted in a Texas court against the enforcement of a foreign judgment is a collateral attack. *Cash Register Sales & Servs. of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278, 280 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Rector,* 710 S.W.2d at 103. In a collateral attack on a sister state's judgment, no defense that goes to the merits of the original controversy may be raised. *Cash Register Sales & Servs.,* 62 S.W.3d at 281; *Goodier v. Duncan,* 651 S.W.2d 25, 27 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (concluding the merits of the underlying action, dealing with an arbitration award, could not be addressed in an action to enforce the judgment). This is true for questions of jurisdiction, if those issues were fully and fairly litigated and decided in the sister court. *Mayhew v. Caprito,* 794 S.W.2d 1, 2 (Tex.1990).[34] A collateral

attack on a judgment is successful only where the judgment is established as void. A judgment is void only when it is apparent the court rendering it lacked (1) jurisdiction over the parties or property; (2) jurisdiction over the subject matter; (3) jurisdiction to enter the particular judgment; or (4) the capacity to act as a court. *See Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985); *Woodfin v. Coleman,* 931 S.W.2d 383, 384–85 (Tex.App.-Austin 1996, writ denied).

Here, when Lanier filed the properly authenticated judgment, valid and final on its face, Lanier established a prima facie case against Brown P.L.L.P.[35] In its summary judgment motion, Brown L.L.P. then asserted a collateral attack on the Georgia judgment and consequently, had the burden to prove the judgment was void. *See Freudenmann v. Clark Assocs.,* 599 S.W.2d 132, 134–35 (Tex.Civ.App.-Corpus Christi 1980, no writ) (noting in summary judgment context, burden is on party challenging foreign judgment).

■■■ We have already disposed of Brown L.L.P.'s argument regarding its dismissal from the Georgia suit. In addition, based upon our finding of misnomer and judicial estoppel, we must reject Brown L.L.P.'s assertion that it was not a party to the underlying proceedings; inas-

**34.** Although recitals in the foreign judgment are generally presumed valid, in an action to enforce a foreign judgment, a Texas court may consider evidence that goes to the jurisdiction of the sister state court over the parties or the subject matter. *See Johnson v. Johnson,* 37 S.W.3d 523, 526–27 (Tex.App.-El Paso 2001, no pet.); *see Rector,* 710 S.W.2d at 103; 5 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 29:27 (2d ed.2000).

**35.** It is unclear if Lanier initially requested enforcement against Brown P.L.L.P. or Brown L.L.P. because Lanier's motion to domesticate is not contained in the record.

Brown L.L.P. did not make any arguments regarding the facial validity of the judgment in the trial court, nor any arguments regarding its finality. Regardless, even if Brown L.L.P. had argued the judgment was not facially valid as against Brown L.L.P., Lanier would have then had the opportunity—and the burden—to make a separate showing that the judgment was valid and enforceable against Brown L.L.P. *See Dear v. Russo,* 973 S.W.2d 445, 446–47 (Tex.App.-Dallas 1998, no pet.) (noting that appellant failed to file facially final judgment and also failed to make separate showing that the judgment was final, thus denying recognition under the UEFJA).

much as Brown P.L.L.P. was a party, Brown L.L.P. was also a party. As previously noted, Brown L.L.P. does not assert any arguments regarding service of process, but instead contends it lacked the requisite minimum contacts with Georgia. However, the evidence established Brown L.L.P. admitted using the copy machine and made rental and maintenance payments on the machine to Lanier's Georgia offices. Also, Brown L.L.P. asserted causes of action against Lanier based upon the copy machine and sought relief from the arbitration award, albeit in a Texas court. Based upon this, we cannot say that Brown L.L.P. was deprived of due process, particularly where the record reflects it received notice of the Georgia proceeding and chose to challenge those proceedings in Texas rather than appearing in Georgia. Thus, we conclude that there were sufficient minimum contacts between Brown L.L.P., Georgia, and the litigation which operate to satisfy the requirements of due process. *See Hill Country*, 773 S.W.2d at 640 (finding sufficient minimum contacts between misnamed defendant and foreign jurisdiction).

**36.** In support of its summary judgment motion, Brown L.L.P. furnished a copy of Lanier's "Motion to Amend to Correct Misnomer" and the Georgia court's order denying the motion. In its order, the court noted Lanier failed to modify the award under federal arbitration law. However, as noted, because Brown L.L.P. did not raise that issue in the trial court, we cannot reverse a summary judgment on that basis. *See Lopez*, 22 S.W.3d at 862. While it is true that under the Federal Arbitration Act, a party has only a limited amount of time to move to correct or modify an arbitration award, *see* 9 U.S.C. §§ 11–12, it is also true that a judgment entered on an arbitration award is enforceable like any other judgment or decree. *See* 9 U.S.C. § 13 (1982); *Tanox, Inc.*, 105 S.W.3d at 270; *see also* GA.CODE ANN. § 9–9–15 (judgment on arbitration award shall be enforced as any other judgment). Further, an action to enforce a judgment is a new and different cause of action. *See Fluor Daniel, Inc. v. H.B. Zachry*

## 2. Res Judicata

Brown L.L.P. also argues Lanier is precluded from asserting a misnomer argument in the Texas proceedings because Lanier sought to amend the Georgia judgment to reflect Brown L.L.P. as the judgment debtor, but the Georgia court denied Lanier's request.[36] Lanier did not appeal the court's denial and Brown L.L.P. argues Lanier is thus barred from requesting this relief by virtue of collateral estoppel or res judicata principles.

Res judicata prevents relitigation of a claim or cause of action that has been finally adjudicated in a prior suit between the same parties. *See* GA.CODE ANN. § 9–12–40; *Dickerson v. Dickerson*, 247 Ga.App. 812, 545 S.E.2d 378, 380 (2001);[37] *Samedan Oil Corp. v. Louis Dreyfus Natural Gas Corp.*, 52 S.W.3d 788, 794 (Tex.App.-Eastland 2001, pet. denied). To establish res judicata, a party must show (1) a prior final judgment rendered by a court of competent jurisdiction;

*Co.*, 1 S.W.3d 166, 170 (Tex.App.-Corpus Christi 1999, pet. denied); *Moncrief*, 805 S.W.2d at 22; *Goodier*, 651 S.W.2d at 27 (noting action seeking full faith and credit of sister state judgment based on arbitration award was new action); *see also* TEX. CIV. PRAC. & REM.CODE § 35.008. Thus, even if the judgment was not subject to modification under arbitration law, it is not exempt from those common-law principles applicable to judgments. The Georgia court's order, denying Lanier's motion to amend, is before this court only to the extent Brown argues it acts as res judicata to Lanier's claims.

**37.** The preclusive effect of a judgment must be determined according to the law of the jurisdiction issuing the initial judgment. *Purcell v. Bellinger*, 940 S.W.2d 599, 601 (Tex. 1997). Here, the laws regarding res judicata and collateral estoppel are essentially the same under both Texas and Georgia law.

(2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *See Doman v. Stapleton,* 256 Ga.App. 383, 568 S.E.2d 509, 513 (2002); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 269 (Tex.App.-Houston [14th Dist.] 2003, pet. filed).

 Like the doctrine of res judicata, collateral estoppel prevents a party from relitigating an issue that it previously litigated and lost. *Quinney Elec., Inc. v. Kondos Entm't, Inc.,* 988 S.W.2d 212, 213 (Tex.1999) (per curiam). Collateral estoppel also requires identity of the parties or their privies, but does not require identity of the claim, as long as the issue was determined in the previous action. *Gwinnett County Bd. of Tax Assessors v. Gen. Elec. Capital Computer Servs.,* 273 Ga. 175, 538 S.E.2d 746, 748 (2000). The elements of collateral estoppel are (1) an issue of fact or law was actually litigated and determined by a valid judgment, and (2) that determination is essential to the judgment in the first action. *Dickerson,* 545 S.E.2d at 380; *see also Tanox,* 105 S.W.3d at 269. The issue decided in the prior action must be identical to the issue in the pending action. *Gwinnett,* 538 S.E.2d at 748; *Tanox,* 105 S.W.3d at 269. The doctrine of collateral estoppel promotes judicial efficiency, protects parties from multiple lawsuits, and prevents inconsistent judgments. *Rexrode v. Bazar,* 937 S.W.2d 614, 616 (Tex.App.-Amarillo 1997, no pet.). A prior adjudication will be given estoppel effect only if it was sufficiently deliberated and firm. *Mower v. Boyer,* 811 S.W.2d 560, 562 (Tex.1991); *see Blakely v. Couch,* 129 Ga.App. 625, 200 S.E.2d 493, 496 (1973).

 Initially, we note that judicial estoppel may be used to prevent a party from asserting a res judicata or collateral estoppel defense. *See Zipp Indus., Inc. v. Ranger Ins. Co.,* 39 S.W.3d 658, 665 (Tex. App.-Amarillo 2001, no pet.). Here, as previously established, because Brown P.L.L.P. was affirmatively represented as the party to be named in the judgment, Brown L.L.P. is judicially estopped from relying on any alleged conclusive effects of the Georgia judgment as to the party named.

 Nevertheless, we address Brown L.L.P.'s res judicata and collateral estoppel argument. We note that inherent in Brown L.L.P.'s contention is the conclusion that the identity of the proper party to be named in the Georgia judgment was fully and fairly litigated. However, the cause of action in the Georgia proceedings involved claims regarding the copy machine; the issue of the proper party to be named in the judgment was not "litigated." *See Fluor Daniel, Inc. v. H.B. Zachry Co.,* 1 S.W.3d 166, 170 (Tex.App.-Corpus Christi 1999, pet. denied). Indeed, the representations made by Brown and on behalf of the Brown entities prevented the issue of misnomer from being fully litigated.

 The evidence establishes that the Georgia judgment was rendered against Brown P.L.L.P. based upon representations made on behalf of the Brown entities, indicating that Brown L.L.P. and Brown P.L.L.P. were one and the same entity, and representations that Brown P.L.L.P. was the correct entity to be named as judgment debtor. Only following entry of the Georgia judgment did Brown L.L.P. assert that Brown P.L.L.P. was a non-existent entity, and indeed, had never existed, thus raising the misnomer issue. A judgment in one suit will not operate as a bar to a subsequent suit based on the same question between the same parties where, in the interval, facts have changed or new facts have occurred

which may alter the legal rights or relations of the parties. *Hernandez v. Del Ray Chemical Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex.App.-Houston [14th Dist] 2001, no writ). When Brown L.L.P. asserted Brown P.L.L.P. was a non-existent entity, this was a "new fact" which altered the legal rights of the parties. Prior to Lanier's action to enforce the judgment, Brown L.L.P. failed to raise the issue of misnomer or misidentification, effectively avoiding litigation of the issue.[38] *See, e.g., Blakely*, 200 S.E.2d at 498 (finding issue not fully litigated); *Mower*, 811 S.W.2d at 562–63 (same).

The issue before this court, and the trial court, is one of misnomer. Although in issuing the judgment the Georgia court found that Brown P.L.L.P. was the judgment debtor, the misnomer issue had not yet been raised. There is no indication in the record that the Georgia court heard argument on Lanier's misnomer claim, nor any indication the court heard evidence on the application of arbitration law to a requested modification based on misnomer.

In sum, we cannot say the trial court erred in denying Brown L.L.P.'s motion for summary judgment, and accordingly, we overrule Brown L.L.P.'s second issue.

### III. CONCLUSION

We find Lanier established, as a matter of law, that a misnomer occurred in the Georgia proceedings and Brown L.L.P. can be held liable on the judgment. We also find that Brown L.L.P. is estopped from arguing it was not a party to those proceedings and Brown P.L.L.P. is a non-existent entity. Moreover, we find Brown L.L.P. failed to present sufficient summary judgment evidence establishing it

---

**38.** We also note in asserting these estoppel principles, Brown L.L.P. had the burden to establish that the parties in the underlying proceedings were the same or were in privity.

was entitled to judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed.

However, Brown L.L.P.'s assertions in the trial court and on appeal are contrary to such a showing.