**Burnette JOHNSON, Appellant,**

v.

**Dianne Dean JOHNSON, Appellee.**

**No. 08–00–00181–CV.**

Court of Appeals of Texas,
El Paso.

Feb. 1, 2001.

two issues. *See* Tex.R.App. P. 47.1 (written opinion to be as brief as practicable).

Gordon Stewart, El Paso, for appellant.

Dianne Dean Johnson, pro se.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

LARSEN, Justice.

Burnette Johnson appeals the trial court's final divorce decree awarding Dianne Dean Johnson 42.5 percent of Burnette's military retirement benefits. Finding the trial court failed to give full faith and credit to North Carolina orders adjudicating the property rights of the parties, we reverse and render.

### FACTS

Dianne Johnson filed for a legal separation from Burnette Johnson in North Carolina in 1989. Both parties were represented by counsel,[1] but Dianne was the only party present at hearing on the matter. During the proceeding, Dianne was seated in the gallery of the courtroom, did not testify, could not hear her case being discussed by the two attorneys at the bench, never discussed a separation agreement, and heard no pronouncement in court about such an agreement. Three weeks later, however, the trial judge signed and entered a separation order,

---

1. Sometime between 1989 and August 2000, the attorneys for both parties in the North Carolina proceeding died.

incorporating an unsigned, attached separation agreement. The order stated that counsel had advised the court that the parties consented to the separation agreement. Although the separation agreement called for the signatures of both parties and two notaries public, the only signature on either the separation order or the attached separation agreement belonged to the judge.

The unsigned separation agreement stated:

> The wife hereby releases and relinquishes unto the husband ... all rights and claims ... and to all the ... personal property of the husband and whatever kind of character and wheresoever situated, and now owned or hereafter acquired, and all rights of whatever kind or character growing out of the said marital relations, and all rights and claims which either party may have against the other to equitable distribution under the laws of North Carolina....

Although Dianne Johnson received a copy of the separation order with attached agreement within weeks of the hearing, it was not until six years later that Dianne filed her motion to set aside the court's separation order in North Carolina. Specifically, she asserted that because she never signed the attached separation agreement, which formed the basis of the separation order, both the order and the attached agreement were void. On August 8, 1995, the North Carolina trial court entered its second order, finding that Dianne's failure to take action within six years was beyond a reasonable time as contemplated by Rules 60(b)(1) and 60(b)(3) of the North Carolina Rules of Civil Procedure.[2]

On July 27, 1999, Burnette filed for divorce in Texas. In response, Dianne filed only a general denial. At the divorce hearing on January 21, 2000, Burnette asked the trial court to take judicial notice of both North Carolina orders, including the unsigned settlement agreement attached to the first order, and the trial court entered them into the record without objection. During trial, Dianne asserted her claim to a portion of Burnette's military retirement benefits, arguing there was never an absolute divorce granted in North Carolina. Before the presentation of evidence, the Texas trial court reviewed the North Carolina orders and, recognizing that the attached separation agreement to the first North Carolina order was unsigned, stated that as a matter of law, the unsigned separation agreement was void and unenforceable. The Texas trial court then deemed those portions of the second North Carolina order that referred to that void agreement to be of no force and effect. Burnette received a running objection to the Texas trial court's ruling, asserting that the ruling constituted a collateral attack on a foreign judgment of a

---

**2.** Rule 60(b) of the North Carolina Rules of Civil Procedure provides:

Rule 60. Relief from Judgment or Order

. . .

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. N.C. R. Civ. P. 60(b).

sister state. In response, the trial court stated,

> I understand that you are not in agreement with my interpretation of these North Carolina papers, and I am simply reciting my findings on it for the record. The basis of this [C]ourt's findings are that the North Carolina order is not a divorce. It is simply a separation agreement, and because of the voidness of the agreement incident to divorce attached to that order, that the North Carolina order does also not deal with any sort of property division.

On March 10, the trial court entered the final decree of divorce, awarding Dianne 42.5 percent of Burnette's military retirement benefits. It is from this decree that Burnette appeals.

### Full faith and credit

Burnette asserts that the trial court erred in failing to grant full faith and credit to the North Carolina orders. Burnette also contends that there was no basis for the trial court's decision to set aside or disregard the North Carolina orders because the only proper basis for that decision would be for lack of North Carolina's personal or subject matter jurisdiction over Dianne. According to Burnette, both personal and subject matter jurisdiction existed as a matter of law because Dianne was the party to initiate both North Carolina proceedings, and she has filed no pleadings in Texas to attack jurisdiction.

Burnette relies primarily on the North Carolina case of *Morris v. Morris*.[3] As in this case, the issue in *Morris* was whether the release or waiver provisions of a separation agreement barred the wife from an equitable distribution of her husband's military pension, and the court concluded that

it did.[4] The court held that neither the Equitable Distribution Act nor its amendments had an affect on an agreement entered into by spouses so as to allow one spouse to avoid the release provisions of the agreement into which he or she had entered.[5] Importantly, the *Morris* court held that its state's statute allows spouses to enter into separation agreements releasing any property rights acquired by marriage, bars any later claim on the released property.[6] "When a prior separation agreement fully disposes of the spouses' property rights arising out of the marriage, it acts as a bar to equitable distribution."[7]

Here, Dianne entered into a separation agreement that fully disposed of all property rights arising from her marriage to Burnette. Moreover, in a direct attack, she challenged that separation agreement in a North Carolina court, which rejected her challenge in a final judgment. Accordingly, the Johnsons' separation agreement acted as a bar to equitable distribution in North Carolina. With this in mind, we now look at the issue of whether the trial court erred in not according full faith and credit to the North Carolina order.

 Article IV, Section 1 of the United States Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state.[8] A properly proven foreign judgment must be recognized and given effect coextensive with that to which it is entitled in the rendering state.[9] Further, the full faith and credit clause requires that a valid judgment from one state be enforced in other states regardless of the laws or public policy of the

---

**3.** 79 N.C.App. 386, 339 S.E.2d 424 (1986).

**4.** *See id.* at 427–28.

**5.** *See id.* at 426.

**6.** *See id.* at 425–26 (citing *Blount v. Blount*, 72 N.C.App. 193, 323 S.E.2d 738, 740 (1984)).

**7.** *See id.* at 426.

**8.** *See Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex.1992).

**9.** *See id.*

other states.[10] In other words, a judgment rendered by a sister state is entitled to the same recognition and credit in Texas as it would receive in the state where rendered.[11] Before a court is bound by the judgment rendered in another state, however, it may inquire into the jurisdictional basis of the foreign court's decree, and if that court did not have jurisdiction, then full faith and credit need not be given.[12]

■ Generally, there are three jurisdictional elements: (1) jurisdiction over the subject matter; (2) jurisdiction over the person or res; and (3) power to render the particular relief awarded.[13] Here, the North Carolina trial court had subject matter jurisdiction over the suit, personal jurisdiction over the parties, and it had the power to render the relief awarded. Dianne was a resident of North Carolina from the time she filed her divorce from bed and board suit in North Carolina until the time Burnette filed for divorce in Texas, she filed suit in North Carolina, both parties were represented at the North Carolina hearings by counsel, and Dianne filed her claim pursuant to the North Carolina statutes involving divorce from bed and board (legal separation) under General Statute provision 50–7 and relief from judgment or order under Rule 60 of the North Carolina Rules of Civil Procedure. Nothing before this court casts doubt upon North Carolina's exercise of jurisdiction.

■ Dianne's sole argument at the Texas hearing was that the separation agreement attached to the legal separation order, because it was unsigned, was void. This is the same argument she presented in her direct attack on the order filed in North Carolina, and which that court rejected. Dianne's argument in Texas constituted a collateral attack on the North Carolina judgment, which did not involve the jurisdiction of the court, and therefore it was impermissible.[14] Where a sister-state judgment is collaterally attacked in this state, the attack will not be successful unless the judgment is void for lack of jurisdiction.[15] This point is sustained.

### CONCLUSION

Because the North Carolina court had jurisdiction, the trial court erred in not according full faith and credit to the North Carolina orders. Therefore, we reverse the judgment of the Texas trial court and render judgment that the North Carolina judgment be fully enforceable, as allowed by law, in Texas.[16]

---

10. *See id.*

11. *See Bryant v. Shields,* 930 S.W.2d 836, 840 (Tex.App.—Dallas 1996, writ denied).

12. *See Underwriters Nat. Assur. Co. v. North Carolina Life and Acc. and Health Ins. Guaranty Ass'n,* 455 U.S. 691, 704–05, 102 S.Ct. 1357, 1366, 71 L.Ed.2d 558 (1982); 47 Tex. Jur. 3d *Judgments* § 163 (1986).

13. *See McGuire v. McGuire,* 18 S.W.3d 801, 804 (Tex.App.—El Paso 2000, no pet.).

14. *See Pellow v. Cade,* 990 S.W.2d 307, 313–14 (Tex.App.—Texarkana 1999, no pet.).

15. *See* 47 Tex.Jur. 3d *Judgments* § 163 (1986).

16. *See Minuteman Press Intern., Inc. v. Sparks,* 782 S.W.2d 339, 343 (Tex.App.—Fort Worth 1989, no writ).