**Irving D. BOYES, Appellant,**

v.

**MORRIS POLICH & PURDY, LLP, A California and Nevada Limited Liability Partnership, Appellee.**

No. 08-04-00157-CV.

Court of Appeals of Texas, El Paso.

July 21, 2005.

Ronald Payne, Dallas, for Appellant.

Lynn Rene Levitan, Brown Mccarroll, Llp, Dallas, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from the trial court's denial of Appellant's motion for new trial and to stay execution of a foreign judgment. For the reasons stated herein, we affirm the trial court's denial of the motion for new trial and the stay of execution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee, Morris Polich & Purdy, LLP filed suit in Nevada state court against various corporate defendants and Irving D. Boyes, individually to recover attorney's fees incurred by Appellee in representing the defendants in an unrelated lawsuit. A copy of the answer filed by Appellant in the Nevada action was included in the appellate record. The Nevada trial court entered a post-appearance and answer, default judgment against all the defendants after striking defendants' answers. The record does not contain any evidence of the reason for the Nevada court's striking of the defendants' answers. No notice of appeal of the Nevada judgment appears in the appellate record and we assume that none was filed. Appellee then filed a notice of filing of foreign judgment in district court in Dallas County, Texas for the purpose of domestication of the judgment in compliance with Chapter 35 of the Texas Civil Practice and Remedies Code. Appellant filed a motion for new trial and motion to stay execution of the judgment solely on the grounds that the Nevada court lacked jurisdiction over Appellant on the basis of insufficient minimum contacts. Appellant

does not address the striking of his answer or the entry of the post-answer default judgment. The motion for new trial was denied by the trial court without specifying the grounds. Appellant filed a notice of appeal of the Texas court's decision, and asserts one issue with three sub-issues.

## II. ISSUES ON APPEAL

In one issue with three sub-issues, Appellant challenges the trial court's denial of his motion for new trial on the grounds that the foreign trial court lacked in personam jurisdiction over Appellant for the reason that "(A) Nevada lacked sufficient minimum contacts to exercise jurisdiction over the non-resident Appellant; (B) Appellee failed to present sufficient evidence at trial [emphasis Appellant's] to establish sufficient minimum contacts over the non-resident appellee [sic]; and (C) it was error for the Court to consider the affidavit of Lynn Levitan and the documents attached thereto as evidence to establish the sufficient minimum contacts over the non resident [sic] appellant." His brief does not address the striking of his answer or the entry of the post-answer default judgment. His appeal only challenges the underlying jurisdictional basis of the case. We read these three sub-issues together as a challenge to the Dallas trial court's failure to grant a motion for new trial for the reason that the Nevada court lacked jurisdiction over Appellant.

## III. STANDARD OF REVIEW

■ The standard of review of the denial of a motion for new trial is abuse of discretion. *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex.1988) (orig.proceeding); *Dugan v. Compass Bank*, 129 S.W.3d 579, 582 (Tex. App.-Dallas 2003, no pet .). A trial court

abuses its discretion when it acts in an arbitrary or unreasonable manner, or in other wording, if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Dugan,* 129 S.W.3d at 582. Similarly, the standard of review for a trial court's imposition of sanctions is also an abuse of discretion. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990); *Masterson v. Cox,* 886 S.W.2d 436, 437 (Tex.App.-Houston [1st Dist.] 1994, no writ).

■ The requisites for setting aside a post-answer default judgment are the same as those essential to set aside a no-answer default judgment. *Director, State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 268 (Tex.1994). The three requirements that must be shown by the movant in order to obtain a new trial are found in the venerable case of *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939): (1) the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident, (2) provided the motion for new trial sets up a meritorious defense, and (3) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. The *Craddock* test applies to post-answer default judgments and to defaults resulting from trial court sanctions that strike pleadings. *See Evans,* 889 S.W.2d at 268 (holding *Craddock* applies to post-answer default judgments); *Equinox Enters., Inc. v. Associated Media, Inc.,* 730 S.W.2d 872, 874 (Tex.App.-Dallas 1987, no writ) (holding *Craddock* applies to default judgments issued after court strikes pleadings in sanction hearing). As stated above, we review a trial court's determination of a motion for new trial under an abuse of discretion standard. *Sharpe v.*

*Kilcoyne,* 962 S.W.2d 697, 701 (Tex.App.-Fort Worth 1998, no pet.).

Because we do not know the basis for the trial court's striking of the pleadings below, we can only assume it was a sanction imposed by the court for some action or inaction by Appellant. Appellant does not challenge the striking of the answer, but rather presents a motion for new trial attacking the merits of the original jurisdictional determination of the trial court. *Craddock* and its progeny limit our review of the denial of a motion for new trial, but because Appellant has not addressed the basis for the striking of his answer and the entry of the default, we look to the second prong to determine whether he has presented a meritorious defense to the judgment. Initially, we note Appellant's motion for new trial only attacks the trial court's judgment on the grounds that Appellant lacks sufficient minimum contacts to be subjected to the Nevada court's jurisdiction. He makes no mention of the procedural process that led to his being haled into the Nevada court and has not preserved any challenge to that process.

■ A meritorious defense is one which, if proved, would cause a different result upon a retrial of the case, although it need not be a totally opposite result. *Jackson v. Mares,* 802 S.W.2d 48, 51 (Tex. App.-Corpus Christi 1990, writ denied). In *Ivy v. Carrell,* 407 S.W.2d 212 (Tex. 1966), the supreme court explained what is required to "set up" a meritorious defense:

> The motion must allege facts which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence proving prima facie that the defendant has such meritorious defense.

*Id.* at 214; *see also Guar. Bank v. Thompson,* 632 S.W.2d 338, 339 (Tex.1982); *Jackson,* 802 S.W.2d at 51. Conclusory allega-

tions do not satisfy the meritorious defense requirement of *Craddock*. *Luebbe v. Booth*, No. 12–03–00289–CV, 2004 WL 1574224, at *3 (Tex.App.-Tyler 2004, pet. denied); *see Stein v. Meachum*, 748 S.W.2d 516, 518 (Tex.App.-Dallas 1988, no writ) and *Boulware v. Sec. State Bank of Navasota*, 598 S.W.2d 687, 689 (Tex.Civ. App.-Houston [14th Dist.] 1980, writ ref'd n.r.e.).

We are presented with a record that establishes that Appellant was before the Nevada court with an answer that was struck subjecting him to a post-answer default judgment. Presented with this limited scope of inquiry, we must determine whether the judgment filed by Appellee should be entitled to full faith and credit as required by the United States Constitution.

## IV. *FULL FAITH AND CREDIT*

■ The limited appellate record before us consists of a clerk's record and a supplemental clerk's record containing few relevant documents with no reporter's record of any proceedings either in the Texas trial court or the Nevada trial court. Appellee is seeking to enforce a Nevada judgment in Texas pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA") pursuant to the requirements of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.001–008 (Vernon 1997). The judgment became enforceable as a Texas judgment on the date it was filed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003; *Walnut Equip. Leasing Co., Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex.1996). It was subject to the same defenses and proceedings for reopening, vacating, or staying a judgment as a judgment of the Texas court. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(c). *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d

477, 483 (Tex.App.-Houston [14th Dist.] 2004, pet. denied).

■ Under the United States Constitution, each state must give a final judgment of a sister state the same force and effect the judgment would be entitled to in the state in which it was rendered. U.S. CONST. art. IV, § 1. Under the authority of the full faith and credit clause of the United States Constitution, Congress enacted a statute, now designated 28 U.S.C. § 1738, which dictates the manner of proving the records of judicial proceedings of other states and also provides that copies of such proceedings, when properly authenticated under the statute, "shall have ... full faith and credit in every court within the United States...." Under the statute, when a judgment of another state is properly authenticated and appears to be a record of a court of general jurisdiction, the court's jurisdiction over the cause on the parties is presumed, unless disproved by extrinsic evidence or the record itself. *See Cook v. Cook*, 342 U.S. 126, 128, 72 S.Ct. 157, 159, 96 L.Ed. 146 (1951); *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938); *A & S Distrib. Co. v. Providence Pile Fabric Corp.*, 563 S.W.2d 281, 283 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.); *First Nat'l Bank of Libby, Montana v. Rector*, 710 S.W.2d 100, 103 (Tex. App.-Austin 1986, writ ref'd n.r.e.).

■ In Texas, the enforcement of foreign judgments is governed by the Texas version of the Uniform Enforcement of Foreign Judgments Act. TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.001 et seq. (Vernon 1997). In interpreting the Act, courts have held that the enforcing state may make a reasonable inquiry into a sister state's judgment and the jurisdiction over the parties before affording the judgment full faith and credit. *See Williams v. State of North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); *First Nat'l*

*Bank of Libby, Montana,* 710 S.W.2d at 103. Specifically, a defendant may challenge the jurisdiction of a sister state to render a foreign judgment on two grounds. First, the defendant may try to demonstrate that service of process was inadequate under the service of process rules of the sister state. Second, the defendant may assert that the sister state's exercise of jurisdiction does not meet the requirement of that state's long-arm statute and due process of law. *See O'Brien v. Lanpar Co.,* 399 S.W.2d 340 (Tex.1966); *First Nat'l Bank of Libby, Montana,* 710 S.W.2d at 104.

■ In interpreting both the Uniform Enforcement of Foreign Judgments Act and the Texas version of the Act, courts have held that when a plaintiff sues on a foreign judgment of a sister state and introduces a properly authenticated copy of the judgment, a prima facie case for enforcement of the judgment is presented. *First Nat'l Bank of Libby, Montana,* 710 S.W.2d at 103. Thereafter, the burden of attacking the judgment and establishing any reason why it should not be given full faith and credit shifts to the defendant. *Williams,* 325 U.S. at 235, 65 S.Ct. at 1097–98; *Minuteman Press Intern., Inc. v. Sparks,* 782 S.W.2d 339, 340–41 (Tex. App.-Fort Worth 1989, no writ); *First Nat'l Bank of Libby, Montana,* 710 S.W.2d at 103.

Looking to the limited record before us, we evaluate Appellant's claim of a lack of jurisdiction by the Nevada trial court to determine whether the Nevada court's judgment properly established jurisdiction over Appellant. We are not presented with any underlying evidence in support of any of the factual allegations of jurisdiction and must look only to the record on appeal. We note that the appellate record contains a copy of the Nevada judgment which reflects the following facts: Plaintiff below presented an application for entry of default judgment before the Honorable Jessie Walsh, judge presiding, over the District Court of Clark County, Nevada, Department XII, on December 1, 2003. The trial court granted the default judgment and found that the default of the defendants was entered on September 23, 2003 due to the court striking the defendants' answers. The court held that Appellant is individually and jointly and severally liable with the corporate defendants for the damages found.

■ The question presented by Appellant is whether the judgment, as a matter of law, reflects personal jurisdiction over Appellant. We hold that it does. The judgment on its face reflects that Appellant had appeared before the Nevada trial court and answered. The record does not reflect the reason that the answer was struck but the fact that an answer on behalf of Appellant was filed and later struck is sufficient to establish that Appellant was subject to the personal jurisdiction of the Nevada court. Under Texas law, the filing of an answer is deemed a general appearance submitting him to the jurisdiction of the court for all reasons. *See Baker v. Monsanto, Co.,* 111 S.W.3d 158, 161 (Tex.2003). Appellee's response to Appellant's motion for new trial reflects that Appellant filed a motion in the Nevada litigation to challenge the Nevada court's jurisdiction over him which was denied. Appellant did not include in the appellate record before us the documents or records related to the proceedings he filed challenging service on him in Nevada. Appellant does not challenge the court's striking of his answer nor does he provide an explanation for the court's actions. As stated previously, no record is included, therefore, we do not know whether the answer was struck for non-appearance or as another sanction. The denial of his

original jurisdictional challenge by the Nevada court resulted in the establishment of personal jurisdiction over Appellant. *See Canadian Helicopters v. Wittig*, 876 S.W.2d 304, 308–09 (Tex.1994). Under Texas law, if Appellant had desired to attack the jurisdiction of the trial court, he could have filed an immediate appeal. A trial court's order granting or denying a special appearance under Rule 120a is appealable as an interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2004–05). This he did not do.

■ From the limited record before us, it appears that Appellant waived his jurisdictional challenge to the denial of the Nevada motion to quash service submitting him to the personal jurisdiction of the Nevada trial court by failing to challenge the denial. Further, Appellant filed an answer in the Nevada litigation which submits him to the Nevada trial court's jurisdiction under Texas law. *See* TEX.R. CIV. P. 121. Appellant has not provided us with evidence of any Nevada law which would require a different finding nor requested that we take judicial notice of any Nevada law. When a party does not provide a court with proof of laws of another state by judicial notice or otherwise, then the laws are presumed to be the same as that of Texas. *See Mindis Metals, Inc.*, 132 S.W.3d at 487.

■ Whether a court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). We hold that Appellant was subject to the in personam jurisdiction of the Nevada trial court as a matter of law.

■ Turning to Appellant's remaining sub-issues, which contend that Appellant lacked minimum contacts with Nevada to establish jurisdiction, and attempts to attack the validity of an affidavit filed by Appellee's Texas attorney providing the court with a copy of the Nevada answer filed by Appellant, we hold that the record is sufficient to establish minimum contacts submitting Appellant to the jurisdiction of the Nevada court. A Texas court may assert personal jurisdiction over a non-resident defendant only if the requirements of both the Texas long-arm statute and the United States Constitution are satisfied. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996).

■ The Texas Supreme Court has interpreted this broad statutory language to reach "as far as the federal constitutional requirements of due process will permit." *BMC Software Belgium, N.V.*, 83 S.W.3d at 795. Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR Ltd.*, 925 S.W.2d at 594.

■ Personal jurisdiction over non-resident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A non-resident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (discussing the constitutional boundaries of personal jurisdiction). Although not determinative,

foreseeability is an important consideration in deciding whether the non-resident defendant has purposefully established "minimum contacts" with the forum state. *Guardian Royal Exchange Assurance, Ltd. v. English China Clays*, 815 S.W.2d 223, 227 (Tex.1991). A defendant, however, should not be subject to a foreign court's jurisdiction based upon "random," "fortuitous," or "attenuated" contacts. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183.

Personal jurisdiction exists if the non-resident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 413–14, 104 S.Ct. at 1872; *BMC Software Belgium, N.V.*, 83 S.W.3d at 795; *Guardian Royal Exchange Assurance, Ltd.*, 815 S.W.2d at 227. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *BMC Software Belgium, N.V.*, 83 S.W.3d at 796; *Guardian Royal Exchange Assurance, Ltd.*, 815 S.W.2d at 228. In contrast, general jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software Belgium, N.V.*, 83 S.W.3d at 796; *Guardian Royal Exchange Assurance, Ltd.*, 815 S.W.2d at 228; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Therefore, we must determine that there are either minimum contacts sufficient to confer specific jurisdiction or continuous and systematic contacts sufficient to confer general jurisdiction.

To establish specific jurisdiction, the cause of action must arise out of or relate to the non-resident defendant's contact with the forum state, and the conduct must have resulted from that defendant's purposeful conduct, not the unilateral conduct of the plaintiff or others. *TeleVentures, Inc. v. International Game Technology*, 12 S.W.3d 900, 907 (Tex.App.-Austin 2000, pet. denied). Thus, in analyzing minimum contacts for the purpose of determining Texas courts' specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *TeleVentures*, 12 S.W.3d at 908; *Michiana Easy Livin' Country Inc. v. Holten*, No. 04–0016, 168 S.W.3d 777, 789, 2005 WL 1252268, at *6 (Tex. May 27, 2005); *Blair Communications, Inc. v. SES Survey Equip. Services, Inc.*, 80 S.W.3d 723, 727 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The contacts must be purposely directed at or take place within the forum, and must have a substantial connection that results in the alleged injuries. *See Michiana Easy Livin' Country Inc.*, 168 S.W.3d at 784, 2005 WL 1252268, at *3.

Under the minimum contacts test for specific jurisdiction, we must determine whether Appellee has had purposeful contacts with the forum state, thus invoking the benefits and protections of its laws. *Guardian Royal Exchange Assurance, Ltd.*, 815 S.W.2d at 226. This requirement ensures that a non-resident defendant will not be haled into a jurisdiction based solely upon random or fortuitous contacts or the "unilateral activity of another party or a third person." *Id.* As long as the contact creates a substantial connection with the forum state, even a single act can support jurisdiction, but a single act or occasional acts may be insufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated connection with the forum. *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. at 2184. In determining

whether a non-resident defendant's contacts are random and fortuitous, the Texas Supreme Court has looked at whether the contacts are based upon the unilateral acts of the plaintiff or if the defendant participated in an act that resulted in a contact. *See Dawson–Austin v. Austin,* 968 S.W.2d 319, 321, 326 (Tex.1998); *CSR Ltd.,* 925 S.W.2d at 595.

██ If a non-resident has a single contact with Texas, our courts may exercise specific jurisdiction only if the contact is of substantial quality and nature and the cause of action arises out of that contact. *Michiana Easy Livin' Country Inc.,* 168 S.W.3d at 787, 2005 WL 1252268, at *5. The focus of the examination must be the nature of the contacts and the "connection" these contacts create with the forum state. *See id.,* 168 S.W.3d at 784, at *3.

Included in the appellate record is a copy of the contract signed by the Appellant agreeing to retain Appellee to provide legal services in connection with litigation occurring in Nevada. The agreement meets the threshold requirement of the minimum contacts for specific jurisdiction. We also note that the agreement as signed by Appellant contains a forum selection clause establishing jurisdiction in Nevada for any dispute arising out of the payments due under agreement. There is no evidence included in the record that contests the validity of the agreement. We must presume that the trial court found the agreement to be valid and binding on the Appellant. Further, the Texas Supreme Court has established that enforcement of forum-selection clauses is mandatory unless the party opposing enforcement "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *In re Automated Collection Technologies, Inc.,* 156 S.W.3d 557, 559 (Tex.2004); *see also In re AIU Ins.*

*Co.,* 148 S.W.3d 109, 112 (Tex.2004). The agreement with the forum selection clause, in light of virtually no evidence challenging its validity, is sufficient to comply with due process.

In his brief, Appellant's arguments are limited to attempts to attack the ultimate finding that the Nevada and Texas trial court's made. Appellant does not provide us with a record to establish what occurred during the Nevada trial court proceedings or any Texas hearing. Appellant's ability to challenge the Nevada judgment is limited by Appellant's failure to properly attack the Nevada judgment by appeal. He cannot now attempt to collaterally attack the Nevada court's judgment.

Once a properly authenticated copy of the judgment is introduced, the burden shifts to the defendant to prove any affirmative defenses to the judgment, such as lack of jurisdiction, faulty service, lack of finality, etc. *Minuteman Press Intern., Inc.,* 782 S.W.2d at 342; *First Nat'l Bank of Libby, Montana,* 710 S.W.2d at 103; *Schwartz v. F.M.I. Properties Corp.,* 714 S.W.2d 97, 100 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Starzl v. Starzl,* 686 S.W.2d 203, 205 (Tex.App.-Dallas 1984, no writ); *A & S Distrib. Co.,* 563 S.W.2d at 283.

██ A defense asserted in a Texas court against the enforcement of a foreign judgment is a collateral attack. *Cash Register Sales & Servs. of Houston, Inc. v. Copelco Capital, Inc.,* 62 S.W.3d 278, 281 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Rector,* 710 S.W.2d at 103. In a collateral attack on a sister state's judgment, no defense that goes to the merits of the original controversy may be raised. *Cash Register Sales & Servs.,* 62 S.W.3d at 281; *Goodier v. Duncan,* 651 S.W.2d 25, 27 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (concluding the merits of the underlying action, dealing with an arbitration award,

could not be addressed in an action to enforce the judgment). This is true for questions of jurisdiction, if those issues were fully and fairly litigated and decided in the sister court. *Mayhew v. Caprito*, 794 S.W.2d 1, 2 (Tex.1990). A collateral attack on a judgment is successful only where the judgment is established as void. A judgment is void only when it is apparent the court rendering it lacked (1) jurisdiction over the parties or property; (2) jurisdiction over the subject matter; (3) jurisdiction to enter the particular judgment; or (4) the capacity to act as a court. *See Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985); *Woodfin v. Coleman*, 931 S.W.2d 383, 384 (Tex.App.-Austin 1996, writ denied).

 Although recitals in the foreign judgment are generally presumed valid, in an action to enforce a foreign judgment, a Texas court may consider evidence that goes to the jurisdiction of the sister state court over the parties or the subject matter. *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 903 n. 34 (Tex.App.-Houston [14th Dist.] 2004, no pet.); *see Johnson v. Johnson*, 37 S.W.3d 523, 526–27 (Tex.App.-El Paso 2001, no pet.); *see Rector*, 710 S.W.2d at 103; 5 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 29:27 (2d ed.2000).

Here the record contains no evidence other than one conclusory affidavit provided by Appellant as an attachment to his motion for new trial attempting to challenge the Nevada court's implied finding of minimum contacts. Nothing in his motion addresses the court's recitations regarding his answer and the entry of a post-answer default judgment.

Therefore, when a sister state judgment is assailed in Texas, the attack being collateral, the judgment must be void for the attack to be successful. *Hun-gate v. Hungate*, 531 S.W.2d 650, 653 (Tex. Civ.App.-El Paso 1975, no writ); *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216 (1942). Finding nothing in the record to suggest that the Nevada judgment is void, we overrule Appellant's sub-issue "B." Because our decisions regarding Appellant's sub-issues "A" and "B" are dispositive of this appeal, we do not reach Appellant's sub-issue "C." Accordingly, having overruled Appellant's Issue No. One, sub-issues "A" and "B," we affirm the trial court's denial of Appellant's motion for new trial and motion for stay.

Having overruled Appellant's issue on review, we affirm the judgment of the trial court.