Opinion issued January 8, 2009






 









 

In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00251-CV

____________


VERLEY LEE SEMBRITZKY JR., 

Appellant


V.


MICHEL LESLIE CASTRINOS SHANKS 

a/k/a MICHEL CASTRINOS SEMBRITZKY, 

Appellee






On Appeal from the 312th District Court

Harris County, Texas

Trial Court Cause No. 2006-06775






MEMORANDUM OPINION


 In this restricted appeal, appellant, Verley Lee Sembritzky Jr., appeals a default
judgment rendered against him in a suit alleging a breach of a contractual alimony
agreement, brought by appellee, Michel Leslie Castrinos Shanks. (1) We determine (1)
whether a misnomer in the citation requires reversal of the judgment and (2) whether
the evidence is legally sufficient to support the damages award. We modify the
judgment and affirm it in part, reverse the judgment in part, and remand the cause
with instructions.

Background

 Sembritzky and Shanks were once married. They divorced in 2001 and, as part
of the agreed divorce decree entered into an agreement for contractual alimony. 
Under this agreement, Sembritzky was to pay Shanks the greater of 25% of his gross
monthly income each month or $5,000, for a total of 60 months, beginning January
1, 2002 and ending after the payment due December 1, 2006, or until such time that
Shanks had received a total of $5,000,000, whichever occurred first. (2)

 On January 31, 2006, Shanks filed a petition for breach of alimony contract,
alleging that Sembritzky failed to pay numerous installments of the contractual
alimony agreement from February 2003 through January 1, 2006, (3) and asserting that
Sembritzky owed at least $180,000 in payments. Shanks also alleged that
Sembritzky's "flagran[t] disregard" of the contractual alimony degree constituted an
anticipatory repudiation of all future payments, and Shanks averred that she was
therefore entitled to the "present value of all maximum future payments due and
owing," after the subtraction of an amount already received by way of garnishment. 
Shanks prayed for an award of $4,952,815.77 ($5,000,000 minus $45,184.23
previously received in garnishment action), attorney's fees, pre- and post-judgment
interest, and costs of court. The action was styled "In the Matter of the Marriage of
Michel Castrinos Sembritzky and Rocky Sembritzky." (4)

 Citation was issued and served on "Rocky Sembritzky." No answer was filed

and no appearance made.

 A default judgment hearing took place on September 21, 2006. The only
evidence offered was the testimony of Shanks, who agreed that, under the terms of
the alimony agreement, Sembritzky was obligated to pay her 25% of his monthly
gross income per month, or $5,000 per month, whichever was greater, from January
1, 2002 through December 2006, with total payments not to exceed $5,000,000. She
testified that Sembritzky had made only one voluntary payment of $5,000, in April
2002, and that a judgment had already been rendered against him for outstanding
alimony payments from January 2002 through January 2003. She agreed that she was
requesting the court to render a judgment "for all amounts due and owing from
February 1 of 2003 through December 1 of 2006," and that it was her belief that
Sembritzky's failure to make any payments since April 2002 constituted a breach of
the entire obligation. She agreed that she was requesting that the trial court accelerate
all the remaining amounts due from October 1, 2006 through December 1, 2006. The
following exchange between Shanks and her counsel then took place:

 COUNSEL: Has Rocky Sembritzky provided you with any information
establishing that 25 percent of his gross monthly income
from January 1, 2002 to the present would be less than $5
million?


 SHANKS: No.


 COUNSEL: Do you have any reason to believe that that amount would
be less than $5 million?


 SHANKS: No, I don't.


 COUNSEL: Are you requesting that this Court enter a judgment in the
amount of $4,935,000 in this matter?


 SHANKS: Yes, I am.


 COUNSEL: Is the amount $4,935,000 based upon $5 million minus the
previous $60,000 judgment, minus the one $5,000 payment
in April 2002?


 SHANKS: Yes.

 Counsel subsequently requested that the trial court enter a default judgment
"against V.L. Rocky Sembritzky in the amount of $4,935,000." The trial court asked
if that was the amount that would be due under the terms of the agreement in
counsel's opinion, and counsel agreed that it was. Counsel then tendered her own
testimony in support of her request for attorney's fees in the amount of $5,000. 

 The trial court awarded damages in the amount of $4,935,000 and attorney's
fees in the amount of $5,000. The written judgment, signed on the same day as the
hearing, stated that V.L. Rocky Sembritzky, although duly served with citation, had
not appeared and wholly made default, and ordered that Shanks recover from "V.L.
Rocky Sembritzky, a/k/a Verley Lee Sembritzky, a/k/a Rocky Sembritzky, a/k/a V.L.
Sembritzky" the sum of $4,935,000, with interest at the rate of 7.75% from February
1, 2003 until final payment, plus attorney's fees of $5,000 and all costs of court with
interest at the rate of 7.75%. The judgment also allowed Shanks such writs and
processes necessary to enforce and collect the judgment. 

 On March 16, 2007, Sembritzky filed a notice of restricted appeal, stating that
he was a party to the judgment, he did not participate in the hearing that resulted in
the default judgment being appealed, and he did not timely file a post-judgment
motion, request for findings of facts and conclusions of law, or a notice of appeal. 
Sembritzky also stated that the notice of restricted appeal was being filed by "Verley
Lee Sembritsky, Jr." and that he had been incorrectly named "Rocky Sembritsky" in
the underlying petition and default judgment. 

Restricted Appeal

 A restricted appeal is a direct attack on a default judgment. Whitaker v. Rose,
218 S.W.3d 216, 219 (Tex. App.--Houston [14th Dist.] 2007, no pet.); see also
Norman Commc'ns v. Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997) (same,
under prior nomenclature of "writ of error"). In order to prevail on a restricted
appeal, a party must establish that: (1) it filed notice of the restricted appeal within
six months after the judgment was signed; (2) it was a party to the underlying suit; (3)
it did not participate in the hearing that resulted in the judgment complained of and
did not file a timely postjudgment motion or request for findings of fact and
conclusions of law; and (4) the error is apparent from the face of the record. See
Alexander v. Lynda's Boutique, 134 S.W.3d 845, 848 (Tex. 2004); Norman
Commc'ns, 955 S.W.2d at 270; Whitaker, 218 S.W.3d at 219; see also Tex. R. App.
P. 26.1(c), 30.

 A restricted appeal affords an appellant the same scope of review as an
ordinary appeal, as long as the error appears on the face of the record. Norman
Commc'ns, 955 S.W.2d at 270. The face of the record, for purposes of a restricted
appeal, consists of all the papers on file in the appeal, including the reporter's record. 
Id. Accordingly, legal and factual sufficiency claims may be challenged in a restricted
appeal. Id.; Whitaker, 218 S.W.3d at 220.

 The first three requirements for a restricted appeal are not in dispute. The issue
before us, then, is whether Sembritzky has shown error on the face of the record. 
Sembritzky asserts three (5) contentions of purported errors on the face of the record:
(1) a misnomer on the citation and judgment naming him "Rocky Sembritzky"; (2) 
legally and factually insufficient evidence to support the damages awarded; and (3)
legally and factually insufficient evidence to support the award of attorney's fees. 

 In her response brief, Shanks asserts that the clerk's record fails to include the
affidavit on attorney's fees which was filed with the trial court, avers that disputing
this issue would be counterproductive, and states that she "waives all attorney's fees
awarded in the default judgment." We construe this as a confession that the record,
as it currently exists, does not support the claim for attorney's fees, and an
abandonment on appeal of her claim for attorney's fees. We therefore do not consider
Sembritzky's arguments regarding attorney's fees, but we modify the judgment to
delete the award of attorney's fees. See Tex. R. App. P. 43.2(b).

 We turn then to Sembritzky's other challenges asserting error on the face of the
record. 

Misnomer

 Sembritzky's first listed issue on appeal is whether he is entitled to review by
way of restricted appeal. Contained within the discussion of this issue is a contention
that error on the face of the record is shown because citation was issued to "Rocky
Sembritzky" and not "Verley Lee Sembritzky, Jr." Sembritzky argues that strict
compliance with the rules of service of process must appear on the face of the record
in order for a default judgment to stand and the citation is required to correctly name
the person to be served. Sembritzky asserts that there can be no presumption that
"Rocky Sembritzky" and "Verley Lee Sembritzky, Jr." were the same person and,
since the petition and citation both incorrectly named him "Rocky Sembritzky,"this
misnomer requires a reversal of the default judgment. Although Sembritzky states
that the misnomer makes it "even more unlikely that the right person was served," he
does not complain that he did not receive service nor does he dispute Shanks's
assertion that he was personally served with citation. 

 A default judgment cannot stand unless the record shows strict compliance
with the rules of civil procedure governing issuance, service, and return of citation,
and there are no presumptions in favor of valid issuance, service or return of citation.
See Uvalde Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex.
1985). Sembritzky argues that "[c]itation issued in the wrong name is error on its
face" and cites Fidelity & Guaranty Insurance Co. v. Drewery Construction Co., Inc.,
186 S.W.3d 571 (Tex. 2006), Uvalde, and Hercules Concrete Pumping Service, Inc.
v. Bencon Management & General Contracting Corp., 62 S.W.3d 308 (Tex.
App.--Houston [1st Dist.] 2001, pet. denied), for support. However, these cases do
not stand for the proposition asserted by Sembritzky. Rather, they simply hold that
a return of service which does show that the name of the person actually served is
identical to that of the person named as the defendant (or agent thereof) in the
petition, will not support a default judgment because there is no proof of service on
the party actually named as the defendant in the petition; these cases involve an issue
of misidentification--raising a question about whether some other person or entity,
not a party to the litigation, was served instead of the named defendant to the suit. (6) Texas courts have recognized a distinction between misnomer and
misidentification. Enserch Corp. v. Parker, 794 S.W.2d 2, 4 (Tex. 1990). 
"Misnomer" is when the plaintiff misnames the correct defendant. Id. 
Misidentification is when the plaintiff is mistaken as to which of two defendants is
the correct one, there actually exists a defendant with the erroneous name, and the
plaintiff has sued the wrong party. (7) Id. at 5; see also Brown, L.L.P. v. Lanier
Worldwide, Inc., 124 S.W.3d 883, 894 (Tex. App.--Houston [14th Dist.] 2004, no
pet.).

 Sembritzky does not contend that there exists a different person by the name
of "Rocky Sembritzky" who is the proper defendant to the breach of contractual
alimony suit, and that he, Verley Lee Sembritzky, Jr., is not a proper party to the suit.
Nor does he assert that he was not a party to the divorce decree which contained the
contractual alimony provision at issue and which included a party named "V.L.
Rocky Sembritzky." He does not contest that he is the person whom Shanks seeks
a judgment against for breach of contractual alimony. (8) Rather, his complaint is that
he was "incorrectly named" in the breach of contractual alimony suit under the
moniker of "Rocky Sembritzky" rather than his formal legal name of "Verley Lee
Sembritzky, Jr." This presents a complaint of misnomer, not misidentification. See
Enserch, 794 S.W.2d.at 4; Brown, 124 S.W.3d at 894. 

 It has long been established that when a person intended to be sued is sued and
served, but under the wrong name, and such person then fails to appear and plead
such misnomer in abatement, and default ensues, the person is bound by such
judgment. Adams v. Consol. Underwriters, 133 Tex. 26, 29, 124 S.W.2d 840, 841
(1939); see also Matthews Trucking Co., Inc. v. Smith, 682 S.W.2d 237, 238 (Tex.
1984) (noting that, in a misnomer case, when plaintiff sued correct defendant under
incorrect name, service on correct defendant would be proper and defendant would
then be under duty to plead such misnomer and seek abatement); Brown, 124 S.W.3d
at 894 (same); Abilene Indep. Tel. & Tel. Co. v. Williams, 111 Tex. 102, 104-06, 229
S.W. 847, 848-49 (1921) (same).

 It is well established that the misnomer of a defendant does not render a
judgment void, provided that the intention to sue the correct defendant is evident
from the pleadings and process such that the defendant could not have been misled. 
Brown, 124 S.W.3d at 895 (citing Adams, 124 S.W.2d at 841, and numerous other
cases); see also Abilene Indep. Tel. & Tel. Co., 229 S.W. at 849.

 "When an intended defendant is sued under an incorrect name, jurisdiction is
proper after service on the defendant under the misnomer." Baker v. Charles, 746
S.W.2d 854, 855 (Tex. App.--Corpus Christi 1988, no pet.) "A misnomer of a
defendant does not render a judgment based on personal service, even one by default,
void, provided the intention to sue the defendant actually served with citation is so
evident from the pleadings and process that the defendant could not have been
misled." Id. (holding that default judgment not void even though defendant was
named "Holley Farlane Baker II" and citations, pleading, and judgment referred to
him as "Holly Baker" when appellant did not raise any issue of mistake in identity or
lack of service). 

 Accordingly, the issuance of citation for a correct party under an incorrect
name (so long as it is consistent with the name of the party as listed in the petition)
does not show error on the face of the record and does not require the reversal of a
default judgment. See Dezso v. Harwood, 926 S.W.2d 371, 374 (Tex. App.--Austin
1996, writ denied) (denying writ of error and affirming default when citation and
petition both listed same incorrect name for correct defendant); Cockrell v. Estevez,
737 S.W.2d 138, 140 (Tex. App.--San Antonio 1987, no writ) (denying writ of error
when petition, citation, and judgment all contained identically misspelled name of
correct defendant). 

 The record in the case before us reflects that the suit was brought against
"Rocky Sembritzky," citation issued against "Rocky Sembritzky," and "Rocky
Sembritzky" was served. Sembritzky admits that he is the person that Shanks seeks
judgment from in this suit and does not assert a lack of service. The fact that the
citation names Sembritzky as "Rocky" (consistent with the petition) rather than
"Verley Lee . . . Jr." does not reflect error on the face of the record. We hold that
there is no error on the face of the record as to the service of citation and overrule this
challenge to the default judgment. 

Sufficiency Challenges

 Sembritzky next asserts that the evidence was legally, or in the alternative,
factually, insufficient to support the amount of damages awarded. Specifically, he
argues that the testimony given by Shanks regarding his gross monthly income was
pure speculation and therefore legally and factually insufficient to support the trial
court's entry of damages in the amount of $4,935,000. (9) 

 As the face of the record includes all papers on file in the appeal, including the
reporter's record, and because a restricted appeal affords an appellant the same scope
of review as an ordinary appeal, the legal and factual sufficiency of the evidence to
support the judgment may be challenged by a restricted appeal. See Norman
Commc'ns, 955 S.W.2d at 270; Whitaker, 218 S.W.3d at 220.

 When a no-answer default is entered against a party on an unliquidated claim,
the non-answering party is deemed to have admitted all facts properly pleaded, except
for the amount of damages. Texas Commerce Bank, Nat'l Ass'n v. New, 3 S.W.3d
515, 516 (Tex. 1999); Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex.
1992); Whitaker, 218 S.W.3d at 220; Arenivar v. Providian Nat'l Bank, 23 S.W.3d
496, 497 (Tex. App.--Amarillo 2000, no pet.). The legal and factual sufficiency of
the evidence to support an award of unliquidated damages in a no-answer default
judgment may therefore be challenged on appeal. Whitaker, 218 S.W.3d at 221;
Arenivar, 23 S.W.3d at 498 . 

 Both parties in this case agree that the contractual alimony agreement provided
for alimony that could range from a minimum total of $300,000 to a maximum total
of $5,000,000, depending on whether the alimony amount due is calculated using the
minimum monthly payment amount of $5,000 per month or the payment of 25% of
Sembritzky's gross monthly income amount per month. The total amount of damages
to be awarded under the agreement depends on which amount is higher. That
determination necessarily requires evidence of Sembritzky's gross monthly income
during the time at issue before a calculation of 25% of his gross monthly income can
be computed in order for the trial court to determine which amount is higher ($5,000
or 25%of gross monthly income), and thus, the actual amount due. Shanks did not
seek a judgment based on the readily calculable fixed amount of $5,000 a month for
a total of $300,000, but rather sought an award based on 25% of Sembritzky's gross
monthly income during the period of payment at issue. The amount of Sembritzky's
gross monthly income during the months for which payment was sought does not
appear in the petition nor in any instrument in writing in the record. Accordingly, the
damages sought in the suit could not be computed by referring to the factual
allegations in the petition or any written instrument before the trial court, and
therefore were not liquidated. See Pentes Design, Inc. v. Perez, 840 S.W.2d 75, 79
(Tex. App.--Corpus Christi 1992, no writ) ("A claim is liquidated if the amount of
damages caused by the defendant can be accurately calculated from the factual as
opposed to the conclusory allegations in the petition and an instrument in writing.");
see also Arenivar, 23 S.W.3d at 498 ("Whether a claim is liquidated must be
determined from the language of the petition, as a seemingly liquidated claim may be
unliquidated because of pleading allegations that require proof for resolution."). The
trial court accordingly was required to hear evidence as to damages. See Tex. R. Civ.
P. 243 Heine, 835 S.W.2d at 83.

 The trial court did hear evidence as to the amount of damages, and the
reporter's record of this hearing, in which testimonial evidence was offered to support
the amount of damages requested, appears in the record on appeal. We therefore may
review, in this restricted appeal, the legal and factual sufficiency of the evidence to
support the unliquidated damages awarded. 

 We consider first Sembritzky's complaint that the evidence was legally
insufficient.

A. Standard of review for legal sufficiency

 In a legal sufficiency, or "no-evidence" review, we determine whether the
evidence would enable reasonable and fair-minded people to reach the verdict under
review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). In conducting
this review, we credit favorable evidence if reasonable jurors could, and disregard
contrary evidence unless reasonable jurors could not. Id. We consider the evidence
in the light most favorable to the finding under review and indulge every reasonable
inference that would support it. Id. at 822. We must, and may only, sustain a no-evidence contention if (1) the record reveals a complete absence of evidence of a vital
fact, (2) the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital
fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the
opposite of the vital fact. Id. at 810; Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d
706, 711 (Tex. 1997).

B. Analysis

 Under the terms of the contractual alimony agreement, Sembritzky was to pay
Shanks either $5,000 a month or 25% of Sembritzky's gross monthly income,
whichever was greater, for 60 months or until the total alimony paid was $5,000,000,
whichever occurred first. Shanks sought the maximum possible total alimony
payment, $5,000,000, which required that she present evidence that 25% of
Sembritzky's total gross income during the period of alimony payments was equal to
$5,000,000. (10) The only evidence presented to the trial court as to Sembritzky's
income during the time in question was testimony from Shanks that: 

 (1) Sembritzky had not provided any information to Shanks that would
establish that 25% of his gross monthly income from January 1, 2002 to the
time of the hearing would be less than 5 million; and


 (2) Shanks had no reason to believe that 25% of Sembritzky's gross monthly
income from January 1, 2002 to the time of the hearing, was less than $5
million.


 Based on these statements, the trial court awarded damages based on a
calculation that 25% of Sembritzky's total income during the time period in question
was $5,000,000. To do so, the trial court would have had to find that the evidence
established that, during the time period in question, Sembritzky had a total gross
income of at least $20,000,000. (11) 

 Neither of Shanks's statements provides any actual evidence that Sembritzky
had a total gross income of $20 million dollars or more from January 1, 2002 to
September 21, 2006. The fact that Sembritzky did not provide information to Shanks
that established that he made less than $20,000,000, and the fact that Shanks had no
reason to believe that Sembritzky made less than $20,000,000, is not evidence that
Sembritzky actually made at least $20,000,000 during the period of time in question.

Inferences upon inferences merely beget inferences, not evidence. See Marathon v.
Pitzner, 106 S.W.3d 724, 728 (Tex. 2003) ("[A]s we have frequently said, some
suspicion linked to other suspicion produces only more suspicion, which is not the
same as some evidence. We have also said that an inference stacked only on other
inferences is not legally sufficient evidence.") (quotations and citations omitted). To
conclude that Sembritzky made more than $20,000,000 based solely on these negative
assertions by Shanks, would be purely speculative and no more than mere surmise
and suspicion, particularly as Shanks acknowledges on appeal that she is "not privy
to Sembritzky's personal income information," and admits that she "failed to come
forward with information regarding [Sembritzky's] gross income." (12) See Tex. R.
Evid. 602 ("A witness may not testify to a matter unless evidence is introduced
sufficient to support a finding that the witness has personal knowledge of the
matter."); Salaymeh v. Plazo Centro, L.L.C., 264 S.W.3d 431, 439 (Tex.
App.--Houston [14th Dist.] 2008, no pet. h.) (noting that uncontested testimony from
witness that appellant did not vacate premises did not prove that appellant actually
occupied premises where witness had no personal knowledge regarding occupation
of premises; holding that "a bare conclusion with no basis in fact cannot support a
judgment"). Shanks's testimony on this matter was, in legal effect, no evidence. See
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983) ("When evidence offered
to prove a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence, the evidence is no more than a scintilla and, in legal effect,
is no evidence."). 

 We hold the evidence legally insufficient to support the amount of damages
awarded and sustain that portion of Sembritzky's second issue. (13) 

 When a no-evidence point is sustained as to the award of unliquidated damages
in an uncontested, no-answer default judgment, the proper disposition is to remand
for a new trial on the issue of unliquidated damages. Heine, 835 S.W.2d at 86;
Arenivar, 23 S.W.3d at 498. Conclusion

 We reverse the portion of the judgment awarding damages and remand the
cause for a new trial on damages. This is a limited remand. See Hudson v. Wakefield,
711 S.W.2d 628, 630 (Tex. 1986). We modify the remainder of the judgment to
delete the award of attorney's fees and affirm the remainder of the judgment as
modified.

 




 Tim Taft

 Justice

 


Panel consists of Justices Taft, Keyes, and Alcala.
1. At the time of the judgment, Shanks was known as Michel Castrinos
Sembritzky.
2. The agreement does not include the term "whichever occurs first." However,
in subsequent litigation involving this agreement, the trial court interpreted the
agreement in such a fashion, finding that appellant had a minimum obligation
of $300,000 ($5,000 x 60 months) and a maximum obligation of $5,000,000
(25% of gross monthly income to be paid each month until $5,000,000 was
paid). Both parties in this appeal adopt this interpretation of the agreement in
their briefs and thus we do likewise.
3. A prior judgment was rendered for amounts due and owing prior to February
1, 2003, apparently calculated using the $5,000-a-month-payment basis. 
4. The underlying final decree of divorce was styled "In the Matter of the
Marriage of V.L. Rocky Sembritzky and Michel Castrinos Sembritzky."
5. Sembritzky also raises two additional purported errors on the face of the record
in his reply brief. However, we will not consider issues raised for the first time
in a reply brief. See Howeth Invs., Inc. v. City of Hedwig Vill., 259 S.W.3d
877, 890 (Tex. App.--Houston [1st Dist.] 2008, no pet.).
6. See Fid. & Guar. Ins. Co. v. Drewery Constr. Co., Inc., 186 S.W.3d 571, 573
(Tex. 2006) (using Uvalde Country Club v. Martin Linen Supply Co., 690
S.W.2d 884, 885 (Tex. 1985), as an example); Uvalde, 690 S.W.2d at 884-85
(holding that record did not show that person named in return of service, Henry
Bunting, was authorized to receive service for, or was connected with,
defendant named in petition, when registered agent for defendant named in
petition was Henry Bunting, Jr.); Hercules Concrete Pumping Serv., Inc. v.
Bencon Mgmt. & Gen. Contracting Corp., 62 S.W.3d 308, 310-11 (Tex. App.
--Houston [1st Dist.] 2001, pet. denied) (holding that return of service stating
that service was had on "George W. Brock, in person ____ (by leaving in the
principal office during office hours ____ of the said Hercules Concrete
Pumping" did not establish that named defendant, "Hercules Concrete
Pumping Service, Inc." was served; noting that return did not establish that
Brock was registered agent for named defendant and that it was possible that
there were several corporate entities whose names began with words "Hercules
Concrete Pumping").


 Sembritzky also cites our opinion in Medeles v. Nunez, 923 S.W.2d 659, 663 
(Tex. App.--Houston [1st Dist.] 1996, writ denied), overruled in part on other
grounds, Barker CATV Constr. Inc. v. Ampro, Inc., 989 S.W.2d 789, 793 (Tex.
App.--Houston [1st Dist.] 1999, no pet.). However, Medeles likewise simply
held that when there is a variance between the name of the defendant in the
petition and the name of the defendant in the citation, the citation does not
comply with the rules of civil procedure because the citation must be directed
to the defendant named in the suit. Medeles, 923 S.W.2d at 662-63. In that
case, the petition named Maria Medeles as the defendant, but the citation was
directed to "Maria Mendeles." (Emphasis added). 
7. The Austin court of appeals has explained:


 "The principle of these cases is simple. If a person thought to be
named A is sued and served under that name the judgment against
him is valid, even though his name is B. But if one has a cause of
action against a person whose name is A and there is another
person with the same or similar name, service on the person
against whom one has no cause of action will not support a
judgment against the one amenable to the cause of action
asserted." 


 Thomas v. Cactus Drilling Corp. of Texas, 405 S.W.2d 214, 216 (Tex. Civ.
App.--Austin 1966, no writ). 
8. Sembritzky specifically asserts that he has been deposed by Shanks's attorney
and testified that he had no income, and contends that Shanks had deposition
and documentary evidence of Sembritzky's income as recently as four months
prior to the entry of the default judgment. 
9. Sembritzky also argues that the trial court improperly accelerated the four final
payments still outstanding when the contractual alimony agreement did not
contain an acceleration clause. However, given our disposition, we need not
reach this contention.
10. Had Shanks sought the minimum possible total alimony payment--$5,000 for
60 months--the total damages awarded would have been $235,000 ($300,000
less the amount already paid directly by Sembritzky ($5,000) and the amount
awarded in a previous judgment ($60,000)).
11. To reach a total alimony payment of $5,000,000 over 60 months, monthly
payments would have to be $8,333.33. For that amount to equal 25% of gross
monthly income, the gross monthly income would have to be $33,333.33. 
Accordingly, in order for the trial court to award the full $5,000,000 maximum
payment under the alimony agreement, Sembritzky's total gross income during
the period in question would have to be $20,000,000 ($8,333 x 60, as the trial
court apparently used the entire term and "accelerated" the final four
payments). If Sembritzky's gross monthly income during the period in
question was greater than $33,333.33 per month, then the monthly payment
would be higher than $8,333.33 but, under the agreement, the total of the
alimony payments would not exceed $5,000,000. Thus, a minimum income of
$20,000,000 during the time in question would have had to be shown in order
to support the damages awarded.
12. Shanks contends that she was under no obligation to discover Sembritzky's
gross monthly income and argues that testimony as to the "total amount due"
was sufficient, citing Texas Commerce Bank, National Association v. New, 3
S.W.3d 515, 517 (Tex. 1999), and Barganier v. Saddlebrook Apartments, 104
S.W.3d 171, 173 (Tex. App.--Waco 2003, no pet.). However, these cases are
factually distinguishable as Shanks's damages under the alimony contract are
specifically tied to Sembritzky's gross income and therefore the "total amount
due" under the contract cannot be determined without evidence of
Sembritzky's gross income. 
13. Because we have found the evidence legally insufficient, we need not address
whether the evidence is factually insufficient. See Harris County Dist.
Attorney's Office v. Pennington, 882 S.W.2d 529, 531 (Tex. App.--Houston
[1st Dist.] 1994, no writ).